203 N.J. Super. 537 (1985)
497 A.2d 562
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN PALADINO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 1985.
Decided August 30, 1985.
*539 Before Judges McELROY and DREIER.
Carolyn E. Arch attorney for appellant (Ms. Arch on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (Robert G. Farrer, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by McELROY, P.J.A.D.
On April 30, 1980, six municipal court complaints were filed against appellant, President of Parker Avenue General Contracting Corporation and Parker Avenue General for failure to remit unemployment and disability compensation contributions for the fourth calendar quarter of 1977, for all quarters of 1978 and for the first calendar quarter of 1979, in violation of N.J.S.A. 43:21-16(e). The remittances, with interest, totaled $101,603.41.
N.J.S.A. 43:21-16(e) provides:
(e) any employing unit or any officer or agent of an employing unit, employer or person failing to remit, when payable, any employer contributions, or worker contributions (if withheld or deducted), or the amount of such worker contributions (if not withheld or deducted), or filing or causing to be filed with the Division of Employment Security of the Department of Labor and Industry of the State of New Jersey, any false or fraudulent report or statement, and any person who aids or abets an employing unit, employer, or any person in the preparation of filing of any false or fraudulent report or statement with the aforesaid division with intent to defraud the aforesaid division or the State of New Jersey or an employment security agency of any other State or of the Federal Government, or with intent to evade the payment of any contributions, interest or penalties, or any part thereof, which shall be due under the *540 provisions of this chapter (R.S. 43:21-1 et seq.), shall be liable for each offense upon conviction before any County Court, county district court, criminal judicial district court, or magistrate's court, to a fine not to exceed $1,000 or by imprisonment for a term not to exceed 90 days, or both, at the discretion of the court. The fine upon conviction shall be payable to the unemployment compensation auxiliary fund of the Division of Employment Security of the Department of Labor and Industry of the State of New Jersey. Any penalties imposed by this subsection shall be in addition to those otherwise prescribed in this chapter. (R.S. 43:21-1 et seq.).
The six complaints were filed April 30, 1980 and the case was listed for hearing on June 17, 1980. The record reveals that a number of adjournments were granted and the matter was rescheduled for September 24, 1980. The taped record of that hearing (or the typist's interpretation of it) is not of good quality. The transcript before us is sometimes difficult to follow but what occurred at that hearing we translate as follows.
On that date defendant appeared without a lawyer. He explained that the lawyer had "pulled away from the case" because he had not been paid, defendant stated he had no money to pay a lawyer and he explained that he had only "found out two days ago he [the lawyer] wasn't going to stay on the case because of nonpayment." Defendant asserted he had "called the court [that] morning and found out his court case was on today." He explained that his mail, i.e., "Parker Avenue Contracting mail was being sent to One Century (phonetic) City" and "[t]hey are not accepting the mail, so I never got notice." He sought another adjournment. The State objected on the ground that the case had been scheduled June 17th, July 7th, August 4th and then September 24th. Apparently there were other adjournments necessitated by a conflict defendant's original attorney had whereby he could not appear in the matter. This conflict caused the retention of another attorney, the one who did not appear because he was not paid. The prosecutor acknowledged that defendant's second attorney had "sent a letter which was received by my office yesterday pertaining that (undiscernible) did not receive this retainer...." Apparently the prosecutor had a copy of another letter that *541 attorney had sent to the court dated August 7th seeking an adjournment (of the September 24th date?); the record does not disclose what action was taken on that request.
It is difficult to get much from this rather poor record but defendant apparently was then without a lawyer and the lawyer had withdrawn two days before the hearing because defendant did not or could not pay his retainer. Defendant, if credible, had no notice as to when the matter was to be heard, apparently because mail was sent to a place which refused to accept it; defendant also claimed he had "been calling the court every week to find out when this case was on" and that he claimed he finally found out the morning of the hearing that the case was on that very day. We cannot assess defendant's credibility as to those assertions but he apparently also attempted to state that he had a defense, that he had "papers" he wanted to bring into court "because there is criminal charges here and that is the part that bothers me." Just what that defense was is impossible to apprehend from this record.
It is apparent that the municipal court judge was frustrated with the numerous adjournments and particularly annoyed with defendant's latest request. It is also obvious that he felt defendant probably had no defense to the charges, as the following colloquy demonstrates.
THE COURT: You can't put off the inevitable here by continually asking for an adjournment, by not paying an attorney, by putting it off and putting it off. Eventually you are going to have to face this situation.
MR. PALADINO: Your Honor to be very honest with you because I didn't have the money.
THE COURT: Well that is the problem that you are here for right? You don't have money?
MR. PALADINO: Right.
THE COURT: That is why the State is on your back, right? Alright now [the prosecutor] has in my experience has handled the situation in a way that I always thought was fair and one of the things he has been able to do is that once a guilty plea has been entered I can postpone sentencing and allow you an opportunity to pay the monies that you owe to the State. That is one alternative. The other alternative is for you to try this case today and prove to me that you don't owe them money which on the record, I will tell you frankly, I know you are going to have a heck of a problem.

*542 MR. PALADINO: Your Honor may I ask a question?
THE COURT: Yes?
MR. PALADINO: Being that I don't have an attorney I am looking for both of you gentlemen to help me out a little bit okay?
THE COURT: Yes.
MR. PALADINO: If I plead guilty to the charges what I understand Parker Avenue General Contracting does owe this money in fact, I am not going to deny that, okay.
THE COURT: Yes.
MR. PALADINO: But if I did plead guilty today and would I have time to bring the documents and everything in to a regular Court?
THE COURT: It would not change the verdict. Once you plead guilty you would be guilty. Then you still have the problem of paying the money.
* * * * * * * *
MR. PALADINO: Well I could get the money your Honor from the Continental Bank. You see Mr. Slater for RSK Construction for which I subcontracted for is in Chapter 11 bankruptcy, so whatever the bank was doing they just stopped dispersing funds for that reason.[1]

*543 THE COURT: Well the point is that this complaint against you must be heard today, either you are going to try it and say I am not guilty and try your case, or you are going to enter a plea of guilty.
MR. PALADINO: Well your Honor to be honest with you.
THE COURT: You don't have any other choices is what I am telling you.
Thereafter the judge again denied defendant's request for an adjournment and told defendant "you are left with a choice of trying this case on your own pro se." When defendant asked what would happen if he pleaded guilty the judge stated that although he could not tell him the sentence in advance, "I can tell you that it has been my custom not to incarcerate anyone if there is no prior violation." Defendant replied, "I will plead guilty okay. I will go through the motions and then who do I see after that to get this money collected?" (Emphasis ours.)
In our view of the matter, the portion we have emphasized illustrates defendant's probable state of mind toward the dilemma he was in: he could not personally try the case; he was told he probably would not go to jail; he did not feel he was personally guilty (see the footnote, ante); he could not afford to pay the large sum due to the State, but he thought he could get the persons responsible to come up with restitution. We note that at an earlier point he had asked the judge whether "if I did plead guilty today and would I have time to bring the documents and everything in to a regular court?" Although *544 the judge then told him that once he pleaded guilty he would "still have the problem of paying the money" it is apparent that defendant nevertheless believed the burden of restitution would not be his to bear. As we shall shortly demonstrate, he misapprehended the effect of his guilty plea; he was given a suspended 90 day sentence and placed on probation for one year conditioned upon payment, within that time, of the more than $100,000 due to the State. Our view is also borne out by the fact that after the judge explained that under the law the court could fine defendant $1,000 and impose up to 90 days in jail on each charge, defendant remarked that he understood but he wanted nevertheless "to get the money." No one explained to defendant that while he might not go to jail he could be subject to an order requiring him to personally pay, $101,603.41, within one year, as a condition of probation. R. 7:4-2(b) requires the court when taking a plea to determine, among other things, that the plea is made "voluntarily with understanding of ... the consequences of the plea." Cf. State v. Kovak, 91 N.J. 476, 484 (1982) (sentence improperly imposed pursuant to a plea agreement where defendant had no understanding that a period of parole ineligibility could accompany the sentence).
Defendant then pleaded guilty, his plea was accepted and sentencing was scheduled for October 29, 1980. No attention was paid to the requirement of R. 7:4-2(b) that the court "shall not accept such plea without first addressing the defendant personally and determining by inquiry of the defendant and of others in the court's discretion that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea and that there is a factual basis for the plea."
We pause in our recitation of the facts of this case to observe that the rule is clear and needs no case citation to support its mandate that a plea of guilty must be supported by the establishment of a factual basis for that plea. We also *545 observe that N.J.S.A. 43:21-16(e) imposes the duty to remit "employer or worker contributions upon any" employing unit "or any officer or agent of an employing unit." An employing unit is defined by N.J.S.A. 43:21-19(g) as "any individual or type of organization ... which had in its employ 1 or more individuals performing services within this State." This was not factually developed. N.J.S.A. 43:21-19(h)(1), (2) and (3) gives three specific definitions of the term "employer", none of which was here factually demonstrated. Most importantly, N.J.S.A. 43:21-16(e) is clearly not a per se or strict liability statute, the intent to evade or defraud the State is the essential element of a charge brought pursuant to that section of the act. State v. Witrak, 194 N.J. Super. 526, 529-532 (App.Div. 1984). The question of defendant's intent, as it applies to the apparent facts of this case, becomes more important as we will illustrate by continuing our discussion of what happened here.
Sentencing was postponed to December 10, 1980. Defendant appeared on that date with an attorney other than the one who presently represents defendant, one "recently" retained. It was then that defendant's possible defense to the charges was indicated. The attorney moved for the withdrawal of the guilty plea. He explained that at the previous hearing of September 24, 1980 defendant "was to be represented by an attorney [who] was to be paid by some other company and [the attorney] was not paid and [defendant] was unable to afford an attorney at that time." He urged that defendant was not guilty because although he was "in charge of disbursing and paying taxes," his "position is that the money was never paid to him by the corporations that were to pay the taxes in. Consequently, he never paid these taxes out." The attorney explained that defendant contended "he never saw ten cents of this money ... he was a middle man and the money never came to him, so he couldn't pay the state."
We again interrupt the narration of facts and procedure to observe that the somewhat sketchy representations made to support the informal motion to withdraw defendant's guilty *546 plea are similar to the more extensive recitation of the facts of defendant's defense set forth in our footnote on pages 542-543. Those assertions, if true, suggest defendant was the nominal president of what may be a paper corporation created by Slater, a principal of Orangegate Construction Inc., to function as a "payroll service" for Orangegate to issue checks to Orangegate's employees. Although this arrangement may have put an obligation on defendant to see to the payments required by N.J.S.A. 43:21-16(e) (the State so contends), that question cannot be determined on this record. We observe that defendant's apparent defense is that his function was ministerial, i.e., neither he nor "his" corporation was the "employer" or an "employing unit" of the workers being paid and because Orangegate never funded his corporation's account with the sums required to be remitted to the State, he could not pay the contributions required by N.J.S.A. 43:21-16(e).
It is unfortunate that full inquiry was not made before the plea was accepted on September 24, 1980. Equally lamentable, is the refusal of the same municipal judge, who when later faced with an outline of a defense on the motion to withdraw the plea made before sentencing, failed to consider the possibility that he had perhaps acted preciptitiously on September 24, 1980 when he was displeased with the number of adjournments and apparently felt that defendant was, as he noted, "going to have a heck of a problem" proving his claimed innocence.
The State opposed the motion to permit withdrawal of the guilty plea by emphasizing the number of previous adjournments and arguing that defendant had a nondelegable duty to remit the required contributions. Defendant's counsel urged that the facts of the defense were complicated and although his client "can try to explain them" but if there were a trial or at least a hearing, "at least the court would, firsthand, have witnesses to testify as to exactly what the situation is ... at least the court [would have] the benefit of knowing the factual basis or the factual situation in imposing sentence."
*547 The judge held that "there was undue delay in bringing this matter to a conclusion." He held "the statute is clear" and, primarily on those bases, denied the motion to retract the plea. He sentenced defendant to concurrent 90 day terms on the six complaints and placed him on probation for one year conditioned upon defendant making restitution of the more than $100,000 figure "during that period." No hearing was held to determine if defendant was capable of paying such a sum in that relatively short time.
The process of ordering restitution implicates due process rights. State in the Interest of D.G.W., 70 N.J. 488, 501, 503 (1976). Although a court may have the discretionary right to impose restitution as a condition of probation[2], State v. Harris, 70 N.J. 586, 591-593 (1976), settled law requires the court to conduct at least a summary hearing. Restitution is regarded as rehabilitative in nature, it is not punitive nor is it retributive. State v. Harris, 70 N.J. at 592-593. Thus, a determination of the amount the defendant can pay and the time within which he can reasonably do so is implicated in the process. State in the Interest of D.G.W., 70 N.J. at 504-505.
In sum, the procedures here followed by the municipal court both in the taking of the plea and in the sentencing process were clearly contrary to established due process created to serve the interests of justice, those of an ordered society and to protect the rights of defendants as well. Had the matter been timely presented to the Law Division, pursuant to R. 3:23, reversal of the conviction and a remand should have been a foregone conclusion. Regrettably, that was not the course taken.
For reasons not explained, no appeal was taken from the judgment of conviction entered on December 10, 1980. The next action undertaken occurred on May 25, 1983 when defendant's *548 present counsel brought a motion in the same municipal court, but before a new judge, for a "new trial" pursuant to R. 7:4-7.
The motion was supported by a memorandum which argued the absence of a factual basis for defendant's plea and that Parker Avenue General was never an "employer" or an "employing unit" as required by N.J.S.A. 43:21-16(e). The memorandum added the additional but as yet unsupported fact that defendant as its president and Patricia Caruso, another officer, were paid for the services they rendered by Orangegate Construction, Inc. It offered to prove this by the testimony of defendant, Ms. Caruso and corporate records. The memorandum also offered to prove by corporate records and the testimony of defendant, Caruso and Orangegate's attorney that Parker Avenue General was a corporation formed by Robert Slater to act "exclusively as a `payroll company' for Orangegate Construction, Inc. to issue payroll checks" to its Orangegate's employees who were engaged in the construction; that only Orangegate hired, fired and controlled those employees; that Parker Avenue General's only source of funds was a weekly deposit into its account, made by Orangegate "to cover payroll and related expenses;" that simultaneously with such deposits Orangegate's bookkeeper would present payroll checks, completed as to payees and amounts, to be signed by defendant and Caruso; that Orangegate not only failed to remit to the State the payments required by the statute but "never funded Parker's account therefor," and that defendant never received nor had access to monies withheld by Orangegate for the taxes in question.
The memorandum urged that because the court had "failed to make inquiry of the defendant, or other persons, the convictions sub judice, have no basis." It argued that had proper inquiry been made the convictions would not have been entered. Counsel argued that there was thus no "jurisdictional basis" for the convictions. This rather convulated jurisdictional argument appears to be engendered by the passage of almost 31 months *549 from the entry of the judgment of conviction, and seems to be the offspring of counsel's conclusion that the only remedy available was a motion for a new trial under R. 7:4-7, the last sentence of which places no time limit where the motion is based "on the ground of ... lack of jurisdiction."
No logical nexus exists, between the judicial failures of which plaintiff complains and jurisdiction. Accordingly, the motion for a new trial received short shrift in the Municipal Court and on appeal to the Law Division. Both judges held defendant's motion for a new trial was untimely filed.
That does not mean that defendant is without a remedy. The situation here was one where the court had jurisdiction but failed to afford due process. The plea of guilty thus obtained and the sentence imposed upon that plea was illegal. It is well established that an illegal sentence is correctible at any time. State v. Sheppard, 125 N.J. Super. 332, 336 (App. Div. 1973), certif. den. 64 N.J. 318 (1973). A court may do so sua sponte. State v. James, 165 N.J. Super. 173, 178-179 (App.Div. 1979), certif. den. 81 N.J. 343 (1979). Basic concepts of justice and fair dealing require that this be so. Defendant's motion, of May 25, 1983, although styled as one for a new trial, attempted to direct the trial court's attention to the legal deficiencies of the original plea and judgment of conviction. The record of those proceedings facially demonstrated the illegality of the plea and the sentence. Although defendant's application was misdirected, State v. Sheppard and State v. Strupp, 101 N.J. Super. 94 (App.Div. 1968) make it clear that "an illegal sentence becomes `inoperative in [its] entirety and [is] properly vacated.'" Sheppard, 125 N.J. Super. at 336 (quoting State v. Strupp, 101 N.J. Super. at 98). The municipal judge before whom the 1983 misguided motion was placed had the power to correct the unjust result by vacating the illegal conviction. The power to punish offenders granted to a court would seem "naturally to include the power to correct sentences imposed by it." State v. Culver, 23 N.J. 495, 504 (1957), *550 cert. den. 354 U.S. 925, 77 S.Ct. 1387, 1 L.Ed.2d 1441 (1957). That power is inherent and requires no specific grant by statute or rule of court. Culver holds that where a sentence imposed was in fact improper the court's jurisdiction to impose a correct sentence does not expire until a valid sentence is imposed. 23 N.J. at 510-511. It can be said with equal force that the same rationale requires vacation of an illegal sentence imposed upon an illegally taken plea, regardless of the time such relief is sought. See also R. 3:22-12 which provides, as to post conviction relief petitions, that a "petition to correct an illegal sentence may be filed at any time." In any event, our rules of court are required to be "construed to secure a just determination" and in the absence of a specific rule our courts are instructed to "proceed in any manner compatible with" such purpose. R. 1:1-2.
The plea of guilty and the judgment of conviction are vacated. The matter is remanded to the Municipal Court of Fort Lee for trial. Jurisdiction is not retained.
NOTES
[1] Defendant's present counsel asserts what the defense would have been. She states the following:

Parker Avenue General Contracting Corporation (Parker Avenue) was neither an "Employer" nor an "Employing Unit." Parker Avenue was formed at the direction of one Robert Slater, President and principal owner of Orangegate Construction, Inc., to function, and did function, exclusively, as a "Payroll service" for Orangegate Construction, Inc. (Orangegate), to issue payroll checks to persons engaged and employed by Orangegate in the construction of Century Towers, a complex of luxury high-rise apartments in Fort Lee, New Jersey. The construction workers were hired and fired by Orangegate, and Orangegate supervised, directed and controlled their work. Neither Parker Avenue, nor its two nominal officers, defendant, John Paladino and Patricia Caruso, hired, fired, supervised, directed or controlled the workers or their work, and neither or them had the right, power or authority to do so.
Parker Avenue's only source of funds was Orangegate which, weekly, made a deposit to cover payroll and related union-contributions into Parker Avenue's account. And, each week, Orangegate's bookkeeper would draw and present for the signatures of defendant, John Paladino and Patricia Caruso net payroll checks that were completed as to payees and amounts. Orangegate never funded Parker Avenue's account with either the monies retained as employer and worker contributions, or with any additional monies for such purposes. Consequently, Parker Avenue, and thus defendant, John Paladino never received, had access to, or deprived the State of New Jersey of the monies withheld by Orangegate.
Finally, defendant, John Paladino, as well as Patricia Caruso, were compensated for the "payroll services" they performed for Orangegate, and not by Parker Avenue.
Thus, the responsibility for collecting and remitting employer and worker contributions to the State of New Jersey rested solely with Orangegate.
We observe that marshalling of the witnesses and evidence to demonstrate these contentions and the courtroom presentation of this evidence does not appear to be a task most layman would readily accomplish. The foregoing assertions by counsel are not supported by any affidavits. Apparently, defendant's counsel intended to produce witnesses to give to testimony these facts when she moved before the municipal court on May 25, 1983 for a "new trial." Unfortunately, her motion papers were not supported by affidavits and the judge refused to take testimony. These proceedings are discussed infra.
[2] The offenses were committed prior to the new code. However, N.J.S.A. 2A:168-2, provided for restitution as a condition of probation.