STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. OTTO AL-TENBURG AND ALTENBURG PIANO HOUSE, INC., A NEW JERSEY CORPORATION, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1987—Decided March 3, 1988.

Before Judges MICHELS, SHEBELL and ARNOLD M. STEIN.

*J. Grall Robinson,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General, attorney; *J. Grall Robinson,* of counsel and on the brief).

*Mark F. Hughes, Jr.,* argued the cause for respondent Otto Altenburg (*Robinson, Wayne, Levin, Riccio & La Sala,* attorneys; *Mark F. Hughes, Jr.* and *Frank P. Arleo,* on the brief).

*Francis J. Hartman* argued the cause for respondent Altenburg Piano House, Inc.

The opinion of the court was delivered by

ARNOLD M. STEIN, J.S.C. (temporarily assigned).

We granted leave to appeal from the trial court's order: suppressing as evidence certain records seized from the business office of defendant Altenburg Piano House, Inc., pursuant to a search warrant, and dismissing counts one and two of the indictment. Defendants also obtained leave to appeal from two rulings by the trial court dealing with the admissibility of certain statements made by defendant Otto Altenburg.

We affirm the order of the trial judge as to the above rulings, but for different reasons than expressed by her in deciding the suppression motion. We conclude that the affidavit submitted in support of the application for a search warrant (*R.* 3:5–3(a)) did not demonstrate probable cause for its issuance. We also affirm the trial judge's admissibility rulings on defendants' cross-motion for leave to appeal.

Defendant Altenburg Piano House, Inc., is a retail seller of pianos and organs. The State alleges a criminal scheme by this defendant and its president, Otto Altenburg, to violate the New Jersey Sales and Use Tax Act, *N.J.S.A.* 54:32B–1, et seq. (hereafter Sales Tax Act). The State contends that, at its various locations, Altenburg Piano House would make sales to New Jersey residents, then falsely report these transactions as exempt, either as deliveries to non-residents in another state (*N.J.S.A.* 54:32B–11), or to tax-exempt organizations (*N.J.S.A.* 54:32B–9), thereby depriving the State of sales tax revenues on each falsely reported transaction. A twenty-seven-count indictment was returned, charging the following offenses:

Count 1—theft by failure to make required disposition of property, in violation of *N.J.S.A.* 2C:20–9 (both defendants).

Count 2—misapplication of entrusted property and property of government, in violation of *N.J.S.A.* 2C:21–15 (both defendants).

Count 3—keeping of false and fraudulent books, records and accounts, in violation of *N.J.S.A.* 54:52–4 (both defendants).

Count 4—falsifying or tampering with records in violation of *N.J.S.A.* 2C:21–4 (both defendants).

Counts 5 to 16—filing of false and fraudulent reports and statements, in violation of *N.J.S.A.* 54:52–1 (both defendants).

Counts 17 to 27—false swearing, in violation of *N.J.S.A.* 54:52–2 (Altenburg Piano House only).

*The Motion to Suppress*

The disputed search warrant was issued on July 30, 1984, and was executed on August 1, 1984, at Altenburg Piano House's main office in Elizabeth. Books and records of the company were seized pursuant to a search conducted by members of the Division of Criminal Justice, assisted by staff from the Division of Taxation. The affidavit in support of the motion was executed by Kenneth A. Bacsik, a sixteen year employee of the Division of Taxation and an auditor with the Division for the last twelve years. We repeat the factual allegations set forth in paragraphs five through eight of the Bacsik affidavit.

5. I was assigned to conduct an investigation and audit into the business operations of Altenburg Piano House, Inc. in December 1983 after an initial inquiry was begun in March 1982 based on information developed through an informant.

6. Information gathered by myself from two informants who wish to remain anonymous revealed fraudulent acts of sales tax evasion in which false records are created to avoid payment of sales tax.

It is my reasonable belief that Informant A is a private citizen with no connection to criminal activity who voluntarily stepped forward to reveal the tax evasion actions of Otto Altenburg which Informant A personally ob-

served. The informant has requested to remain anonymous for fear of physical and financial harm by Otto Altenburg.

It is my reasonable belief that Informant B is a private citizen having no involvement with criminal activity and separate and independent of Informant A who voluntarily stepped forward to assist in the investigation of this case.

7. I was personally contacted by or did personally contact Informant A on March 12, 1982, December 9, 1983, December 12, 1983, January 3, 1984, January 12, 1984, January 13, 1984, January 23, 1984 and June 12, 1984 to discuss the aforementioned tax violations and the methods in which they were conducted. According to the personal knowledge of Informant A as indicated to me, Informant A was told by the firm's president, Otto Altenburg, that Altenburg devised a method by which the delivery records were altered from the actual sales contracts to indicate that residents of the State of New Jersey who were sold pianos or organs at one of Altenburg's stores were given out-of-state addresses, thereby avoiding payment of the five (5%) percent and six (6%) percent New Jersey sales tax. It was also indicated to me by Informant A that Informant A personally saw Altenburg record and file correct delivery slips separate from the fraudulent delivery slips for purposes of warranty and maintenance service. The location of the accurate set of delivery records was described to me by Informant A as being stored in an office on the first floor in the southeast corner at the 1150 East Jersey Street address.

8. I have had personal contact with Informant B on January 3, 1984 concerning Altenburg Piano House, Inc. and the methods of tax evasion being conducted. Informant B verified the actions of Otto Altenburg, the methods in which the sales tax evasion took place in that he personally knew of and saw the creation of duplicate contracts and invoices created for evading sales tax. Informant B has asked to remain anonymous for fear of physical and economic harm by Otto Altenburg.

Following indictment, defendants moved to suppress the evidence seized pursuant to the search warrant. A defense affidavit placed the credibility of Bacsik's affidavit in issue. The judge took initial testimony, and eventually conducted a full-scale hearing to determine whether the Bacsik affidavit contained material misstatements made knowingly or in reckless disregard of the truth. *Franks v. Delaware*, 438 *U.S.* 154, 171–172, 98 *S.Ct.* 2674, 2684–2685, 57 *L.Ed.*2d 667, 681–682 (1978); *State v. Howery*, 80 *N.J.* 563, 567 (1979), *cert.* den. *sub nom. Howery v. New Jersey*, 444 *U.S.* 994, 100 *S.Ct.* 527, 62 *L.Ed.*2d 424 (1979). Following this hearing, the motion judge suppressed the seized evidence, finding that Bacsik's affidavit contained several misstatements and omitted significant critical

information. Most significant was Bacsik's failure to disclose that "Informant A" was a disgruntled former son-in-law of Otto Altenburg who had divorced Altenburg's daughter in December 1980, and who had worked for the piano company between 1976 and August 17, 1980. The judge concluded that the misstatements and omissions were made by Bacsik with reckless disregard of the truth. She found that after deletion of the material misrepresentations and the inclusion of the material omissions, the affidavit no longer supported a finding of probable cause for issuance of the warrant.

We need not review in detail the factual findings and legal conclusions made by the motion judge after completion of the *Franks* hearing. As we stated earlier, there is a more fundamental reason for suppressing this evidence: the Bacsik affidavit does not establish probable cause for the issuance of a search warrant.

■ This affidavit is defective because it does not contain a single reference as to the time of occurrence of any criminal activity. Absent some time reference, the allegations of the affidavit are inadequate to provide a neutral judicial officer with a reasonable basis for suspicion that a present search of the premises and a seizure of the books and records would yield current evidence of criminal activity. *State v. Novembrino*, 105 *N.J.* 95, 124 (1987). To the same effect, see *Rosencranz v. United States*, 356 *F.*2d 310, 316–317 (1st Cir.1966), quoted with approval in *Novembrino*, 105 *N.J.* at 124:

"... To make a double inference, that the undated information speaks as of a date close to that of the affidavit and that therefore the undated observation made on the strength of such information must speak as of an even more recent date would be to open the door to the unsupervised issuance of search warrants on the basis of aging information."

The problem with the Bacsik affidavit is not one of stale information. The document is more fatally flawed. Its critical defect is the failure to provide *any* information about when the

alleged criminal activity occurred. 2 *LaFave, Search and Seizure: A Treatise on the Fourth Amendment* (Second Edition, 1987) § 3.7(b) at 88–89 *(LaFave )*.

We recognize that the supporting affidavit purports to catalog a course of conduct occurring over an extended period of time, and that where the affidavit properly recites facts indicating a continuous course of criminal conduct, the passage of time becomes less significant. *United States v. Johnson*, 461 *F*.2d 285, 287 (10th Cir.1972). So too, we note that business records are likely to remain in possession of a criminal suspect for a considerable period of time. *Andresen v. Maryland*, 427 *U.S.* 463, 478, 96 *S.Ct.* 2737, 2747, 49 *L.Ed.*2d 627, 641, n. 4 (1976); *United States v. Hershenow*, 680 *F*.2d 847, 854 (1st Cir.1982). When we apply the "totality-of-the-circumstances" test set forth in *Illinois v. Gates*, 462 *U.S.* 213, 233, 103 *S.Ct.* 2317, 2329, 76 *L.Ed.*2d 527, 545 (1983), and followed by our Supreme Court in *State v. Novembrino*, 105 *N.J.* at 122, this affidavit cannot pass judicial muster. As Justice Rehnquist stated in *Gates:*

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

After careful scrutiny of Bacsik's affidavit, the most positive inferences that can be gleaned therefrom are that at some unknown time, defendants were engaged in a scheme to defraud the State of New Jersey of sales tax revenues; that Otto Altenburg recorded and filed both correct and fraudulent delivery slips to carry out the scheme; and that business records were maintained at the defendant company's principal place of business in Elizabeth. Because no information is provided in the affidavit from which the issuing judge could rationally infer a time period in which the alleged criminal conduct occurred, there is no basis for a finding of probable cause.

The Sales Tax Act has been in effect since July 1, 1966. *N.J.S.A.* 54:32B–3. All that we are left with is a conclusion that at some uncertain time, probably after 1966, Altenburg Piano House was engaged in criminal conduct and, for that reason, the company's books and records for the years 1979 through 1983 are subject to seizure and inspection. Such affidavit falls far short of satisfying our federal and state constitutional prohibition against unreasonable searches and seizures. *U.S. Const.*, Amend. IV; *N.J. Const.* (1947), Art. I, ¶ 7.

Because we find the Bacsik affidavit to be facially defective, we need not address the State's argument that, at a *Franks* evidentiary hearing,

> If the challenger is permitted to marshal all exculpatory facts, fairness dictates that the government be allowed to support the affidavit with additional inculpatory information known to the affiant at the time the affidavit was made. [*United States v. Williams*, 737 *F.*2d 594, 604 (7th Cir.1984), *cert.* den. 470 *U.S.* 1003, 105 *S.Ct.* 1354, 84 *L.Ed.*2d 377 (1985).]

We note that Professor LaFave has characterized the proposition advanced in *Williams* as "unduly broad." 2 *LaFave*, Sec. 4.4(d), 202–203, n. 69. Nevertheless, we need not decide this question, because the State concedes in its supplemental brief that a facially insufficient affidavit cannot be saved by additional inculpatory evidence introduced at a *Franks* hearing.

The evidence remains suppressed.

*The Dismissed Indictment Counts*

■ We reject defendants' contention that criminal prosecution for a Sales Tax Act violation can only be brought under the provisions of that Act. See, *e.g., N.J.S.A.* 54:32B–26(b), making certain violations of that Act a disorderly persons offense. There is no basis in the Sales Tax Act for finding a legislative intent to preclude prosecutions under other applicable criminal laws in appropriate cases. *State v. Pescatore*, 213 *N.J.Super.* 22, 29 (App.Div.1986), aff'd o.b. 105 *N.J.* 441 (1987).

■ In *Pescatore,* we reinstated an indictment alleging violations of *N.J.S.A.* 2C:20–9 and 2C:21–15. However, that case did not specifically address the applicability of these statutes to situations where, as here, the fraudulent scheme involved failure to collect the tax by falsely listing purchasers as non-resident customers or exempt organizations. Our analysis compels a conclusion that the then applicable statutes were not intended to cover such a scheme.

*N.J.S.A.* 2C:20–9 provides in pertinent part that

A person who purposely *obtains or retains* property ... subject to a known legal obligation to make specified payment or other disposition, ... is guilty of theft if he deals with the property as his own and fails to make the required payment or disposition. [Emphasis added.]

For the period covered by this indictment, *N.J.S.A.* 2C:21–15 read in pertinent part:

A person commits a crime if *he applies or disposes of property* that has been entrusted to him as a fiduciary, or property of the government ... in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted.... [Emphasis added.]

We agree with the trial judge that under the scheme alleged in the indictment, the defendants did not "obtain or retain property," a required proof element under *N.J.S.A.* 2C:20–9, nor did they "apply or dispose of property," a requirement of proof under *N.J.S.A.* 2C:21–15 during the period embraced by the indictment. We find no basis in these statutes to support the concept advanced by the prosecutor that under *N.J.S.A.* 54:32B–3, the first 5% or 6% of any sales of non-exempt tangible personal property belongs to the State. *N.J.S.A.* 2C:20–9 and 2C:21–15 are criminal statutes which must be strictly construed. *State v. Carbone,* 38 *N.J.* 19, 23–24 (1962); *State v. Insabella,* 190 *N.J.Super.* 544, 550 (App.Div.1983). A fair interpretation of these statutes does not permit prosecution thereunder for the conduct claimed by the State to be criminal. As Justice (later Chief Justice) Weintraub observed in *Neeld v. Giroux,* 24 *N.J.* 224, 229 (1957):

> The difficulty lies not in the want of [legislative] power, but rather in the absence of an exercise of that power. [Brackets added.]

We observe that the Legislature has now amended *N.J.S.A.* 2C:21–15 to cover situations where fraudulent schemes are utilized to avoid payment of the required sales tax (*L.* 1987, *c.* 76, § 33, effective on the day following the ninety-day period of tax amnesty provided in *N.J.S.A.* 54:53–16). We reproduce this statute, as amended, in the footnote below.[1]

Counts one and two of the indictment remain dismissed.

Finally, for the reasons expressed by the trial judge, we affirm the rulings allowing into evidence certain statements made by Otto Altenburg during the course of service upon him of a subpoena, and declining to make a pre-trial ruling as to the admissibility of other statements made by Altenburg during the execution of the search warrant.

The order of the Superior Court, Law Division, is affirmed. We remand the matter for trial on the remaining issues of the indictment and for proceedings consistent with this opinion.

Affirmed.

---

[1] 2C:21–15. Misapplication of Entrusted Property and Property of Government or Financial Institution. A person commits a crime if he applies or disposes of property that has been entrusted to him as a fiduciary, or property *belonging to or required to be withheld for the benefit of the government* or of a financial institution in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted whether or not the actor has derived a pecuniary benefit. "Fiduciary" includes trustee, guardian, executor, administrator, receiver and any person carrying on fiduciary functions on behalf of a corporation or other organization which is a fiduciary.

If the benefit derived from a violation of this section is $75,000.00, or more, the offender is guilty of a crime of the second degree. If the benefit derived exceeds $1,000.00, but is less than $75,000.00, the offender is guilty of a crime of the third degree. If the benefit derived is $1,000.00, or less, the offender is guilty of a crime of the fourth degree.

*For the purposes of this section, the term "benefit derived" shall include but shall not be limited to the amount of any tax avoided, evaded or otherwise unpaid or improperly retained or disposed of.* [Emphasis added.]