778 A.2d 1153 (2001)
343 N.J. Super. 464
STATE of New Jersey, Plaintiff-Respondent,
v.
Richard PESSOLANO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 22, 2001.
Decided August 6, 2001.
*1154 Peter A. Garcia, Acting Public Defender, attorney for appellant (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Bennett A. Barlyn, Deputy Attorney General, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges STERN, A.A. RODRÍGUEZ and FALL.
The opinion of the court was delivered by STERN, P.J.A.D.
Tried to a jury, defendant was found not guilty of misconduct by a corporate official, N.J.S.A. 2C:21-9c and 2C:2-6 (count one), but convicted on two counts of theft by failure to make required disposition of property received, N.J.S.A. 2C:20-9, 2C:2-6 and 2C:2-7 (counts two and three);[1] *1155 misapplication of entrusted property and property of government, N.J.S.A. 2C:21-15, 2C:2-6 and 2C:2-7 (counts four and five); failure to turn over employer withholding taxes, N.J.S.A. 54:52-15, 2C:2-6, and 2C:2-7 (count six); failure to file two personal gross income tax returns, N.J.S.A. 54:52-8 (counts seven and eight); and failure to file a corporation business tax return, N.J.S.A. 54:52-8 and N.J.S.A. 2C:2-7 (count nine).
The conviction on counts two and four related to the retention and non-payment of New Jersey unemployment and disability insurance contributions of General Machine and Instrument Co. employees in an amount greater than $75,000 in 1991 and 1992. The convictions on count three, five and six related to the non-payment of gross income withholding tax in 1990, 1991 and 1992. Counts seven and eight dealt with defendant's failure to file his New Jersey Gross Income Tax resident returns for 1991 and 1992 respectively, and count nine concerned defendant's failure to file a New Jersey State Corporation Business Tax return on behalf of N.C. Fabritech, Inc., for the year ending December 31, 1991.
Count two was merged into count four, and defendant was sentenced thereon to a term of eight years in the custody of the Commissioner of Corrections. Counts three and six were merged into count five, and defendant was given a five-year concurrent sentence on that conviction. $5,000 fines were imposed on counts seven, eight and nine, and defendant was ordered to pay $140,268.89 in restitution, "minus any amount paid by co-defendant, Warren Kaye."
On this appeal, defendant argues:
POINT ONE: THE TRIAL COURT'S ENTIRELY GENERAL INSTRUCTIONS COULD NOT HAVE ADEQUATELY GUIDED THE JURY. ADDITIONALLY, THE COURT COMPLETELY FAILED TO INSTRUCT THE JURY AS TO THE STANDARDS UNDER WHICH PERSONAL RESPONSIBILITY CAN BE IMPOSED FOR CORPORATE ACTIONS, AND AS TO THE DEFENSE OF GOOD FAITH, NECESSITATING REVERSAL. (Not Raised Below)
A. The Trial Court Failed To Tailor the Jury Charges to the Complex Commercial Setting Of This Case.
B. The Trial Court Also Failed To Instruct The Jury That It Must Consider The Specific Liability Of The Defendant, And Failed To Provide Any Standards For Determining Whether the Defendant Was Appropriately Held Liable.
C. The Trial Court Also Failed to Instruct the Jury As To the "Good Faith Defense."
D. Reversal Is Required Despite The Failure To Request The Noted Charges.
POINT TWO: THE DEFENDANT'S SECOND-DEGREE CONVICTIONS ARISING FROM FAILURE TO REMIT UNEMPLOYMENT INSURANCE CONTRIBUTIONS ARE WITHOUT BASIS IN LAW AND MUST BE VACATED. (Not Raised Below)

POINT THREE: THE STATE FAILED TO PROVE SECOND-DEGREE FAILURE TO MAKE REQUIRED DISPOSITION OF PROPERTY RECEIVED OR MISAPPLICATION OF ENTRUSTED PROPERTY AND PROPERTY OF GOVERNMENT ARISING FROM FAILURE TO REMIT UNEMPLOYMENT INSURANCE CONTRIBUTIONS, BECAUSE THE MAJORITY OF THE REMITTANCES AT ISSUE WERE NEITHER *1156 OBTAINED NOR ENTRUSTED FUNDS. (Not Raised Below)
POINT FOUR: THE TRIAL COURT'S DENIAL OF THE DEFENDANT'S MOTION TO PROCEED PRO SE WAS ERRONEOUS AND HIGHLY PREJUDICIAL, NECESSITATING REVERSAL. U.S. Const., Amends. VI, XIV; N.J. Const. (1947), Art. 1, par 10.
POINT FIVE: THE TRIAL COURT ABUSED ITS DISCRETION BY FORCING THE DEFENDANT TO PROCEED TO TRIAL WITHOUT HAVING REVIEWED DOCUMENTATION IN THE STATE'S POSSESSION, NECESSITATING REVERSAL.
POINT SIX: THE ORDER OF RESTITUTION WAS IMPROPER IN THE ABSENCE OF A HEARING AS TO ABILITY TO PAY, AND INCORRECT AND UNJUST IN ITS JOINT AND SEVERAL ASPECT, AND ACCORDINGLY MUST BE VACATED. (Not Raised Below)
POINT SEVEN: THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE, NECESSITATING REDUCTION.
Our review of the record convinces us that, except as noted in this opinion, these contentions are clearly without merit and warrant only the following discussion. See R. 2:11-3(e)(2).

I.
In 1988, defendant, co-defendant Warren Kaye ("Kaye") and NC Fabritech ("NCF"), a company owned by defendant and his family, formed GMI Holding, Inc., for the purpose of eventually acquiring a manufacturing company, General Machine and Instrument Co., Inc. ("GMI"), from the previous owners, the Stickling family. Kaye became president of GMI, and defendant served as vice-president. A management agreement was adopted in which the Sticklings would remain the owners of GMI and have two seats on the Board of Directors.[2] In addition, they agreed that NCF would receive 1% of GMI's "`shipments' as a `management fee.'"
GMI's main business from 1988 to 1991 was developing a manufacturing method for mainframe computer parts for IBM, GMI's principal customer. Kaye was responsible for managing the company, while defendant handled sales and manufacturing. Because GMI focused on research and development and had few sales, it was only marginally profitable at first.
In April 1988, Carol Capuano ("Capuano") was hired as GMI's financial manager, with responsibility for the company's finances, including accounts payable, billing, reports, income statements, tax returns and preparation of checks for tax payments. She also helped set up the company's accounting program. From 1988 to 1991, Kaye was responsible for overseeing the payment of all taxes, including state unemployment insurance taxes and employee withholding taxes.
In 1991, GMI's performance improved dramatically because IBM was buying most of the mainframe parts it manufactured. Further, defendant testified that a dispute concerning the Sticklings' use of funds led to a settlement agreement whereby the Sticklings resigned from the Board, and GMI Holding, Inc. acquired the right to appoint directors and officers. Thereafter, defendant unilaterally appointed himself president of GMI in February 1991. Kaye testified that he accepted defendant's appointment because the company was "starting to do well," while Capuano testified that defendant told her that *1157 Kaye was pushed out as president because the Sticklings were dissatisfied with his performance. In any event, Capuano testified that when defendant became president, "he took over personnel and all the financial responsibility" because Kaye was often absent from work. Prior to defendant's appointment, Capuano sought Kaye's authorization to make any payments required in the course of business.
In April 1991, defendant moved the company's accounts to a new bank and excluded Kaye as a signatory from the general operating account. As a result, Kaye no longer saw corporate bank statements, did not write checks on the general account, and signed only payroll and occasionally vendor checks.[3] Capuano testified that she needed defendant's approval for all GMI payments, including taxes.
Defendant denied having control over the finances of GMI. He testified that when GMI Holding, Inc. was authorized to appoint directors and officers, Capuano was appointed to the position of treasurer and that "she would now take over the responsibility of accounting on a higher level." He further stated that it was Capuano who was in "total control" of all records and accounting books. Defendant explained that not including a money market account, Capuano was authorized to access and transfer funds from all other accounts.
During the first, second and third quarters of 1991, and the first and second quarters of 1992, GMI failed to make unemployment and disability payments to the New Jersey Department of Labor totaling $82,543.83 for its employees. It was Capuano's responsibility to make such payments, but she testified there was insufficient money in the payroll account with which to do so. Capuano testified that she often asked defendant to deposit additional money into the account so the required tax payments could be made, but that he would only cover the payroll.
Capuano further testified that she discussed this issue weekly with defendant from 1990 to 1992, telling him it was his responsibility as a corporate officer to make the payments, but he "gave [her] a look" in response and never gave her sufficient money with which to do so. Defendant contradicted her testimony, claiming Capuano had total control of the company's finances and he told her "a hundred times" to pay the taxes when he learned they had not been paid.
According to Capuano, GMI received five late notices from the Department of Labor ("Department"), but defendant told her to do nothing until contacted by them. Although the Department contacted Capuano regarding the delinquent payments, and she requested an installment agreement in 1992, no payment was made while she was employed at GMI.
In addition, from August 1990 until December 1992, GMI failed to pay employee withholding taxes totaling $57,725.06 to the New Jersey Division of Taxation ("Division"). Moreover, neither employee withholding taxes nor unemployment and disability contributions were withheld from defendant's salary because he was not directly compensated. Defendant's salary checks were made payable to NCF at his direction.
The non-payment of taxes led to an investigation by the Division auditor Ellen Kocon. Her examination, which included GMI's wage and tax statements and employee withholding tax returns, indicated that GMI deducted earnings for tax withholding *1158 from employee paychecks but did not remit those funds to the State. Further investigation revealed that defendant did not file personal income tax returns from 1988 to 1994, GMI did not file corporate tax returns in 1991 and 1992, defendant received his "remuneration" from GMI by payments to NCF, and NCF did not file corporate tax returns from 1985 to 1991. In September 1991, NCF's corporate charter was vacated for non-payment of state taxes, but it remained in business and accepted defendant's salary payments after that date.
In 1991, the year for which the convictions flowed from NCF's failure to file a return, all of NCF's income came from GMI. Defendant testified that NCF was a consulting business, but he did not provide a customer list when investigators requested one, and they could not find records of any customer deposits. It was discovered that checks from NCF were used to pay defendant's personal expenses; further, checks from GMI, drawing from several accounts, were also signed by defendant.
In late 1991 or early 1992, IBM informed GMI that it would not be making any purchases for two months to one year, which left the company financially devastated. Because there was little business and the company did not have enough cash to pay his salary, Kaye left the company in April or May of 1992, and the company did not pay the taxes withheld, nor employee or employer disability and unemployment contributions.

II.
Defendant had expressed dissatisfaction with his retained counsel's preparation for trial and had consulted with other attorneys. However, his motion for adjournment to obtain new counsel came on the day the trial commenced,[4] and his application to proceed pro se was made after jury selection was completed. Defendant now contends that the trial judge improperly denied his constitutional right to proceed pro se. We reject the contention.
"[L]ike any other request for substitution of an attorney, a defendant's decision to dismiss his lawyer and represent himself must be exercised in a timely fashion. The right of self-representation is not a license to disrupt the criminal calendar, or a trial in progress," State v. Buhl, 269 N.J.Super. 344, 362, 635 A.2d 562 (App.Div.), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994). Here, defendant's application to proceed pro se was made after the jury was selected and immediately before opening statements. The trial judge, therefore, did not abuse his discretion in denying defendant's request to proceed pro se. Id. at 363-64, 635 A.2d 562.

III.
Defendant argues his convictions on counts two and four, regarding his failure as a corporate officer to remit unemployment and disability payments to the State, are without "basis in law, because the unemployment compensation law, N.J.S.A. 43:21-1 et seq., is entirely self-contained, and therefore provides the only penalties which may be applied to violations of its provisions." He asserts that N.J.S.A. 43:21-16 is the specific statute governing violations of the law in this respect.[5] It provides in part:

*1159 Any employing unit, or any officer or agent of an employing unit, which officer or agent is directly or indirectly responsible for collecting, truthfully accounting for, remitting when payable any contribution, or filing or causing to be filed any report or statement required by this chapter, or employer, or person failing to remit, when payable, any employer contribu-tions, or worker contributions... or filing or causing to be filed ... any false or fraudulent report or statement with intent to defraud the State... or with intent to evade the payment of any contributions, interest or penalties... which shall be due under the provisions of this chapter (R.S. 43:21-1 et seq.), shall be liable for each offense upon conviction before any Superior Court or municipal court, to a fine not to exceed $1,000.00 or by imprisonment for a term not to exceed 90 days, or both.... The fine ... shall be payable to the unemployment compensation auxiliary fund. Any penalties imposed by this subsection shall be in addition to those otherwise prescribed in this chapter (R.S. 43:21-1 et seq.).

[N.J.S.A. 43:21-16(e).]
Defendant relies primarily on State v. Pescatore, 213 N.J.Super. 22, 516 A.2d 261 (App.Div.1986), aff'd o.b., 105 N.J. 441, 522 A.2d 440 (1987), which concerned whether a failure to remit sales taxes could be prosecuted under N.J.S.A. 2C:20-9 and 2C:21-15 as well as specific provisions of the Sales Tax Act. After noting that "[w]hether the specific [statute] bars prosecution under other more general legislation is a matter of legislative intent," id. at 29, 516 A.2d 261, the court found that the statutory phrase permitting prosecutions under N.J.S.A. 54:32B-26(b) "in addition to any other penalties herein or elsewhere prescribed," indicated a legislative intent to permit prosecution under Title 2C as well. Id. at 29-30, 516 A.2d 261.[6] Here, defendant points out that, unlike the Sales Tax Act, N.J.S.A. 43:21-16(e) specifically refers only to permitted prosecutions authorized under that section or as "otherwise prescribed in" chapter 21 of Title 43. Nevertheless, we cannot conclude that the Legislature intended to prohibit traditional Title 2C criminal prosecution for thefts or misappropriations of unemployment and disability funds withheld from employees and not paid over to the State. Hence, while matters may be prosecuted under Title 43, see State v. Paone, 290 N.J.Super. 494, 497, 676 A.2d 159 (App.Div.1996); State v. Paladino, 203 N.J.Super. 537, 539, 497 A.2d 562 (App.Div.1985), the prosecutor may exercise his or her discretion to prosecute by indictment and trial by jury.
It is axiomatic that "[s]pecific conduct may violate more than one statute." State v. Blount, 60 N.J. 23, 31, 286 A.2d 36 (1972); see also State v. Eure, 304 N.J.Super. 469, 473-76, 701 A.2d 464 (App. Div.1997), certif. denied, 152 N.J. 193, 704 A.2d 23 (1998); Pescatore, supra, 213 N.J.Super. at 28-29, 516 A.2d 261. Therefore, "[i]n the many situations where criminal statutes overlap in prohibiting the same basic act, the [prosecutor] in the sound exercise of the discretion committed to him may proceed under either act," State v. Gledhill, 67 N.J. 565, 574, 342 A.2d 161 (1975) (quoting State v. States, 44 N.J. 285, 292, 208 A.2d 633 (1965)); State v. Eure, supra, 304 N.J.Super. at 475, 701 A.2d 464, so long as judgment is not entered against the defendant "under more than one statute for the same offense." Pescatore, supra, 213 N.J.Super. at 30, 516 A.2d 261. See also N.J.S.A. 2C:1-8(a). The legislative intent for prosecution under a single statute or to prohibit the prosecutor's election "must be manifest" and "capable of no other reasonable interpretation," Gledhill, supra, 67 N.J. at 580, *1160 342 A.2d 161 (quoting States, 44 N.J. supra, at 291, 208 A.2d 633); see also State v. Damiano, 322 N.J.Super. 22, 53, 730 A.2d 376 (App.Div.1999), certif. denied, 163 N.J. 396, 749 A.2d 369 (2000); State v. Stelzner, 257 N.J.Super. 219, 239, 608 A.2d 386 (App.Div.), cert. denied, 130 N.J. 396, 614 A.2d 619 (1992); cf. State v. Altenburg, 223 N.J.Super. 289, 298, 538 A.2d 822 (App.Div.), aff'd o.b., 113 N.J. 508, 551 A.2d 534 (1988); and such legislative intent does not exist in these circumstances.

IV.
Defendant also argues that employer contributions to State unemployment and disability compensation funds are neither "obtain[ed]" nor "retain[ed]" funds, as required by N.J.S.A. 2C:20-9, nor "entrusted" funds, as required by N.J.S.A. 2C:21-15.[7] In 1991 and 1992, GMI failed to make unemployment and disability payments totaling $82,543.83 for its employees, of which approximately $19,000 were employee, as opposed to employer, contributions. The employer deducts the employee's contributions from paychecks, and holds them in trust until paid to the State quarterly, whereas the employer must pay its contributions directly. See N.J.S.A. 43:21-2(a)(d). Defendant insists that the $75,000 threshold for a second degree crime has not been satisfied because the corporation never "obtain[ed]" or "retain[ed]" its portion of the contribution, as required for a prosecution under N.J.S.A. 2C:20-9. Defendant also contends the corporation's contributions were neither "entrusted" to the defendant as a fiduciary, nor "belong[ed] to or required to be withheld for the benefit of the government," as required under N.J.S.A. 2C:21-15.
Defendant further argues that according to In re Hoerst, 135 N.J. 98, 103-03, 638 A.2d 801 (1994), N.J.S.A. 2C:20-9 applies only to "specific and discrete" property that has been obtained or retained from a specific source, such as employee withholding, and not to property from an unspecified source, like employer contributions from the corporation's general operating account.
Hoerst refers to the elements of N.J.S.A. 2C:20-9:
[t]he offense ... is committed when a person (1) purposely obtains or retains property ... upon agreement or subject to a known legal obligation to make specified payment or other disposition...; (2) deals with the property obtained as his own ...; and (3) fails to make the required payment or disposition.
[135 N.J. at 103-04, 638 A.2d 801 (citing State v. Kelly, 204 N.J.Super. 283, 287, 498 A.2d 784 (App.Div.1985)).]
We agree with defendant that a criminal statute must be strictly construed, see State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987), and have difficulty with the State's argument under N.J.S.A. 2C:20-9 in the absence of a jury finding that relates the amount of funds not paid to the State to amounts defendant obtained or retained for personal expenses instead of making the required payments to the State. Similarly, while accomplice liability was charged to the jury and the State's summation seemed to relate defendant's conduct to the corporation's retention of funds for its use, the jury was not instructed as to the theory of liability by which the State proceeded or the factual prerequisites for accomplice liability.[8] *1161 However, as count two was merged into count four, and defendant was neither sentenced nor the subject of a judgment of conviction on count two, we decline to pass on the issue.
We disagree with defendant's argument that the conviction under N.J.S.A. 2C:21-15 cannot stand. As defendant points out, in State v. Altenburg, 223 N.J.Super. 289, 297, 538 A.2d 822 (App. Div.), aff'd o.b., 113 N.J. 508, 551 A.2d 534 (1988), we rejected the concept that the first five percent or six percent of sales of non-exempt tangible personal property must be retained for the purpose of paying sales tax, and thus, belongs to the State. Id. at 297, 538 A.2d 822. We found that the sales tax is not retained from the amount of a given sale, but is charged in addition to the sale itself. Id. at 293, 297, 538 A.2d 822. Because the defendant never charged or collected the sales tax, he neither "obtain[ed]" nor "retain[ed]" the tax and could not pay it from a specified source "entrusted" to him or "belonging to or required to be withheld for the benefit of the government," as required under N.J.S.A. 2C:21-15. Id. at 297, 538 A.2d 822.
Here, however, the employer contributions were due from the corporation, from any corporate revenues or funds, and not from a dedicated sales tax. Id. at 293, 538 A.2d 822. Moreover, Altenburg pointed out the then-recent amendment to the definition of "benefit derived" in N.J.S.A. 2C:21-15 which was expanded to include "the amount of any tax avoided, evaded or otherwise unpaid or improperly retained or disposed of," which applies in this case. 223 N.J.Super. at 298, n. 1, 538 A.2d 822; L. 1987, c. 76, § 33. We are satisfied, from our careful review of the trial transcript, that the jury could properly find that defendant was a "person carrying on fiduciary functions on behalf of a corporation," N.J.S.A. 2C:21-15, and responsible for the non-payment of the required contributions. He also could have been an accomplice of the corporation in its decision not to make the required payments. See N.J.S.A. 2C:2-6; 2C:2-7. See also N.J.S.A. 2C:1-14(g) defining "person" as including "a corporation." We therefore uphold the conviction on count four.

V.
Defendant argues that the order of restitution of $140,268.89, minus the amount paid by Kaye, was improper absent a hearing as to ability to pay. N.J.S.A. 2C:44-2 reads in part:
b. The court shall sentence a defendant to pay restitution ... if (1)[t]he victim... suffered a loss; and (2)[t]he defendant is able to pay or, given a fair opportunity, will be able to pay restitution.
c. In determining the amount and method of payment of restitution, the court shall take into account all financial resources of the defendant, including the defendant's likely future earnings, and shall set the amount of restitution so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay.

[(Emphasis added).][9]
See, e.g., State v. Scribner, 298 N.J.Super. 366, 372, 689 A.2d 789 (App.Div.1997) ("[i]n order to impose restitution, a factual *1162 basis must exist and there must be an explicit consideration of defendant's ability to pay"), certif. denied, 150 N.J. 27, 695 A.2d 669 (1997); Paladino, supra, 203 N.J.Super. at 547, 497 A.2d 562 ("[t]he process of ordering restitution implicates due process rights," and "settled law requires the court to conduct at least a summary hearing"). See also State v. Newman, 132 N.J. 159, 172-73, 178-79, 623 A.2d 1355 (1993); State in the Interest of D.G.W., 70 N.J. 488, 501, 503, 361 A.2d 513 (1976); State v. McLaughlin, 310 N.J.Super. 242, 263-64, 708 A.2d 716 (App.Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998); compare State v. Orji, 277 N.J.Super. 582, 589, 649 A.2d 1368 (1994).
In this case, the judge held no hearing and made no comments during sentencing about defendant's financial status or ability to pay. Moreover, unlike cases such as Orji, defendant "disput[ed]" the amount of restitution, and he was no longer employed, had lost his business, and was about to be incarcerated. Furthermore, the amount of restitution was made subject to an unknown credit for any amount paid by Kaye, and there was no fixed responsibility in terms of the obligation of either defendant.[10] Accordingly, we remand for reconsideration of the restitution award in light of the statute and subsequent developments, including the conditions of parole established by the Parole Board.

VI.
The judgment of conviction is affirmed, except as to the restitution ordered, and the matter is remanded for a restitution hearing.
NOTES
[1] N.J.S.A. 2C:2-7 was cited because General Machine and Instrument Co., Inc., was a co-defendant, as was another of its principals, Warren Kaye, who pled guilty and testified for the State.
[2] Defendant and Kaye constituted the remaining members of the Board.
[3] Kaye entered a guilty plea on counts two and six of the indictment and was sentenced to five years probation. The conditions included payment of "$1,000.00 a month of restitution to the State of New Jersey."
[4] The judge indicated counsel could be substituted if ready to proceed the following day. The judge concluded that defendant had been "dissatisfied" with counsel for "four or five months" and was "certain" defendant's request was "simply for purposes of delay."
[5] In light of our disposition, we need not address the State's contention that "by failing to interpose any objections to the indictment before trial, defendant has forfeited the opportunity to allege any purported defects for purposes of this appeal." See R. 3:10-2(c).
[6] N.J.S.A. 54:32B-26(b) was deleted by amendment effective December 9, 1987.
[7] This is an alternative argument to the one just discussed and is limited to employer contributions. If defendant succeeds on this ground, he would be entitled to entry of judgment for a third degree crime because the conviction could not apply to funds not actually withheld from the employee. See the grading provisions of N.J.S.A. 2C:20-2.
[8] There was no instruction relating the specific factual allegations to the law or explaining that these funds had to have been paid to defendant or used by him personally, as opposed to merely being retained by the corporation for its benefit and, in turn, for the benefit of defendant as an officer and holder of an equity interest in the company.
[9] There is no suggestion that this statute, as rewritten by L. 1991, c. 329 § 6, does not apply.
[10] The restitution ordered represented the full amount of the State's "loss." We do not suggest that joint and several responsibility for restitution cannot be imposed in the appropriate manner and circumstances. Scribner, supra, 298 N.J.Super. at 371-72, 689 A.2d 789; see also D.G.W., supra, 70 N.J. at 508, n. 5, 361 A.2d 513. Here defendant suggested at sentencing that his responsibility should be reduced by the amounts to be paid by Kaye.