JUSTICE PATTERSON delivered the opinion of the Court.
**464 When a criminal defendant is admitted into pretrial intervention (PTI), the court may impose on that defendant the obligation to pay restitution to the victim of his or her alleged offense as a condition of PTI. In accordance with the PTI program's rehabilitative goal, the PTI court holds a hearing to determine the participant's ability to pay and orders the participant to pay a specific amount. Evidence of *632 a restitution obligation imposed as a condition of PTI is inadmissible in any subsequent civil or criminal proceeding against the defendant.
This appeal arises from the trial court's reliance on an indemnification obligation, designated by a PTI court as a condition of PTI, as dispositive evidence in a civil dispute. Third-party defendant Dr. George Likakis was charged with aggravated arson and insurance fraud after a fire destroyed a residential building that he owned. When Likakis was admitted into PTI, the PTI court required him to pay a specific amount in restitution to his insurer, defendant/third-party plaintiff The Providence Mutual Fire Insurance Company (Providence), based on Providence's prior insurance payments to plaintiff RSI Bank, holder of a mortgage on the property. The PTI court also ordered Likakis to indemnify Providence and hold it harmless for its undetermined future liability to RSI Bank arising from the fire. The PTI court thus imposed on Likakis an unquantified restitution requirement, without first determining that Likakis could meet such an obligation.
During his one-year period of PTI supervision, Likakis paid Providence the specified restitution amount but did not indemnify Providence or hold it harmless for any additional liability to RSI Bank. With the prosecutor's consent and with no discussion of the indemnification provision, the PTI court terminated Likakis's PTI supervision and dismissed his indictment.
In this insurance coverage litigation, Providence relied on the indemnification provision of Likakis's PTI agreement in its third-party complaint against Likakis. It settled its claims with RSI Bank for $353,536.90, and sought to recover $243,890.60 from **465 Likakis on the basis of the indemnification provision. The trial court enforced the provision and entered judgment in Providence's favor against Likakis. An Appellate Division panel affirmed that determination.
In appropriate settings, a PTI court's imposition of restitution as a condition of PTI furthers the participant's rehabilitation as it compensates the victim of the alleged offense. A PTI court, however, may include a restitution condition in a PTI agreement only if it can quantify the financial obligation and assess the participant's current and prospective ability to meet that obligation. An open-ended agreement to indemnify the victim of the participant's alleged offense for unspecified future losses is not an appropriate condition of PTI. Moreover, a restitution condition of PTI is inadmissible as evidence in a subsequent civil proceeding against the PTI participant. The indemnification provision of Likakis's PTI agreement should have played no role in this civil litigation.
Accordingly, we hold that the trial court erred when it entered judgment in favor of Providence. We reverse the Appellate Division's judgment and remand the matter to the trial court for further proceedings.
I.
We derive our summary of the facts from the record presented to the trial court in this matter.
Pursuant to a Mortgage and Security Agreement dated October 14, 2003, RSI Bank held a first-priority mortgage on several properties as collateral for a $700,000 loan to Perth Amboy Professional Center, LLC, a limited liability corporation owned by Likakis. One of the properties subject to the mortgage was a residential property located at 519 New Brunswick Avenue in Perth Amboy (the Property).
On June 21, 2011, Providence issued a commercial liability policy to Likakis and *633 Perth Amboy Professional Center, LLC, **466 which covered the Property. The policy, in effect from August 20, 2011 to August 20, 2012, named RSI Bank as first mortgagee/loss payee. The policy obligated Providence to "pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear." It included the following provision:
If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of the Coverage Part:
(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.
At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.
On August 28, 2011, Hurricane Irene caused a flood that substantially damaged the roof and basement of the residential building on the Property. On January 6, 2012, the building was virtually destroyed in a fire. It was eventually condemned and demolished. Witnesses told investigators that they had seen Likakis, wearing latex gloves and carrying a heavy package, on the Property the day before the fire. Investigators attributed the fire to arson.
Following the fire, Likakis submitted insurance claims to Providence based on flood and fire damage to the Property. RSI Bank, in its capacity as mortgage holder and loss payee, also submitted claims to Providence for flood and fire damage to the Property. Following a "thorough investigation," Providence denied both sets of claims.
II.
A.
Providence's denial of coverage prompted the filing of two actions in the Law Division. The first was filed by Likakis's dental practice, Dr. George Likakis, DDS, and Perth Amboy Professional **467 Center, LLC. In that action, the plaintiffs alleged that Providence had denied coverage in bad faith.
The second action was the lawsuit that gave rise to this appeal. In that case, RSI Bank asserted against Providence claims for breach of contract, fraudulent misrepresentation, violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -210, and bad faith. Providence filed a third-party complaint against Likakis, alleging claims based on both common law and contractual indemnification.
Both civil lawsuits -- Likakis's action against Providence, and RSI Bank's action against Providence in which Likakis was named as a third-party defendant -- were pending when the Middlesex County Prosecutor's Office commenced criminal proceedings against Likakis.
B.
On May 23, 2013, a Middlesex County grand jury indicted Likakis on one count of second-degree aggravated arson, N.J.S.A. 2C:17-1(a), one count of third-degree insurance fraud based on false statements of material fact, N.J.S.A. 2C:21-4.6(a)(1), and one count of third-degree insurance fraud based on omission of material facts, N.J.S.A. 2C:21-4.6(a)(1).
*634 Likakis applied for admission into the Middlesex Vicinage's PTI program. On April 30, 2014, the PTI Director recommended that Likakis be admitted into PTI. In the PTI Recommendation, the Director noted the fire investigator's conclusion that the fire resulted from arson and stated that witnesses implicated Likakis in that arson. The PTI Director stated, however, that the incident represented the only charge for an indictable offense in Likakis's history, and deemed the fire to be an "isolated event."
The PTI Director concluded that Likakis would benefit from supervised treatment. She told the PTI court that although Likakis was indicted for a second-degree offense, "the victim, [Providence], does not object to the defendant's enrollment into PTI as long as" Likakis satisfied three conditions: restitution in the **468 amount of $11,321.89, representing the insurance proceeds already paid to RSI Bank; Likakis's commitment to "protect/compensate [Providence] from any and all claims that may be brought against [Providence] by RSI Bank as the result of the ... fire"; and the dismissal with prejudice of Likakis's lawsuit against Providence. The prosecutor consented to those terms.
The PTI court approved Likakis's admission into PTI. On May 14, 2014, the court entered an order postponing further proceedings in Likakis's criminal matter for a period of one year, and setting forth the standard and special conditions of his PTI supervision.[1] With Likakis's consent -- but no assessment of his ability to pay -- the court also imposed the three conditions of PTI that Providence had requested. First, Likakis was required to pay Providence $11,321.89 in monthly installments of $1000 per month. Second, Likakis was ordered to "[p]rotect/compensate, indemnify and hold harmless [Providence] from any and all claims that may be brought against [Providence] by RSI Bank."[2] Third, Likakis was required to dismiss his civil action against Providence with prejudice.
At a hearing before the PTI judge, at which Providence was not represented, the prosecutor confirmed Likakis's agreement to those terms. The prosecutor stated that the terms "indemnify, hold harmless, compensate" meant that Likakis would not "pursue now or ever any claim against [Providence] regarding the loss and the payment that [Likakis was] going to make to [Providence] for the $11,000." Likakis confirmed that he understood that agreement as the prosecutor characterized it. The prosecutor reminded Likakis that his PTI conditions were "independent" of the one-year **469 period of supervision, and told Likakis that his PTI would not be terminated after a year if he failed to make the required payments.
The PTI court subsequently explained to Likakis the consequences of the "monetary obligation" imposed on him as a condition of his admission into PTI. The court stated that "[i]t's important that that indemnification be paid within the 12-month period. Otherwise, there's a possibility that P.T.I. may be extended until you've handled all your financial obligations."
During his one-year PTI supervisory term, Likakis paid Providence the specific *635 restitution amount set forth in his PTI agreement. He also dismissed with prejudice his lawsuit against Providence. Likakis did not make any payment to Providence related to the separate indemnification provision.
By order dated May 20, 2015, with the prosecutor's consent, the PTI court terminated Likakis's PTI supervision and dismissed his indictment. The record reveals no discussion of the indemnification provision of Likakis's PTI agreement in the final stage of his PTI supervision.
C.
The coverage litigation that gave rise to this appeal was pending during Likakis's year-long PTI supervision. When Likakis completed PTI on May 20, 2015, the matter remained unresolved.
On July 31, 2015, RSI Bank and Providence settled their coverage dispute. Providence agreed to pay RSI Bank $353,536.90 in settlement of all of the bank's claims based on the insurance policy that insured Likakis's property, including claims arising from flood and fire damage to that property. As part of that settlement, RSI Bank assigned to Providence a second-lien position in a mortgage issued by RSI Bank to Likakis, his wife, and his dental practice, as well as the note that accompanied that mortgage. In the assignment, RSI represented that the balance due on the mortgage was $353,536.90.
**470 Providence moved for summary judgment against Likakis based on the provision of the PTI agreement in which Likakis agreed to indemnify and hold harmless Providence. It asserted that it was a third-party beneficiary of that agreement, and that Likakis was liable to it in the amount of its settlement with RSI Bank.
The motion judge granted in part and denied in part Providence's summary judgment motion. The judge held that Providence was a third-party beneficiary of the PTI agreement's indemnification provision. He found, however, genuine issues of material fact as to whether the parties to the PTI agreement intended that agreement to survive the PTI supervisory period, and the amount of any damages for which Likakis would be liable.
Those undecided issues were litigated in a non-jury trial. The evidence consisted entirely of documents. No witness testified for either party.
Following the trial, the court entered judgment in favor of Providence on its contractual indemnification claim.[3] The court held that the indemnification provision of the PTI agreement was enforceable against Likakis notwithstanding the conclusion of his PTI supervision. The trial court cited the plain language of the agreement and Likakis's acknowledgment when he was admitted into PTI that he was bound by the agreement. The trial court concluded that the PTI agreement imposed a "restitution or reimbursement" obligation on Likakis, and that the agreement did not expire after the one-year period of PTI supervision. It ordered Likakis to pay Providence $232,568.71, representing the portion of the settlement funds that Providence attributed to fire damage, **471 less $11,321.89, the amount *636 that Likakis had paid Providence during his PTI supervisory period.
Likakis appealed, and an Appellate Division panel affirmed the trial court's judgment. The panel rejected Likakis's arguments that the trial court lacked jurisdiction to enforce a term of Likakis's PTI agreement and that the agreement could be enforced only during the one-year period of PTI supervision. The panel held that the language of the indemnification provision was clear and that Providence, as a third-party beneficiary of that agreement, was entitled to enforce the indemnification provision in the parties' civil litigation.
We granted Likakis's petition for certification. 230 N.J. 414, 168 A.3d 1176 (2017).
III.
Likakis argues that no court other than the PTI court had jurisdiction to enforce the PTI agreement. He asserts that the PTI agreement is analogous to a criminal sentence, and that it was negotiated for the benefit of the State, not to compensate Providence. Likakis contends that even if a civil court had the authority to enforce a provision of his PTI agreement, any such authority expired at the conclusion of his PTI supervision.
Providence argues that the trial court had jurisdiction to enforce the PTI agreement pursuant to Article VI, Section 3, Paragraph 2 of the New Jersey Constitution, which confers original jurisdiction on the Superior Court "in all causes." Providence asserts that the trial court properly found that it is the third-party beneficiary of Likakis's PTI agreement with the State, and that the State refrained from prosecuting Likakis in consideration for Likakis's agreement to pay restitution to Providence. Providence contends that Likakis's indemnification obligation survived the expiration of the one-year period of PTI supervision.
**472 IV.
A.
We review two determinations: the motion judge's grant of partial summary judgment and the trial court's determination following a non-jury trial.
Appellate review of a summary judgment decision is premised on the same standard that governs the motion judge's determination. Bhagat v. Bhagat, 217 N.J. 22, 38, 84 A.3d 583 (2014). Pursuant to that standard, a court grants summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). "When no issue of fact exists, and only a question of law remains, this Court affords no special deference to the legal determinations of the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199, 129 A.3d 1069 (2016) ; see Freedom from Religion Found. v. Morris Cty. Bd. of Chosen Freeholders, 232 N.J. 543, 553, 181 A.3d 992 (2018).
We uphold the trial court's factual findings in a non-jury trial "if they are based on credible evidence in the record." Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 329, 156 A.3d 1061 (2017). "To the extent that the trial court interprets the law and the legal consequences that flow from established facts, we review its conclusions de novo." Ibid.; accord Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
B.
PTI "is an alternative procedure to the traditional process of prosecuting criminal *637 defendants." **473 State v. Leonardis, 71 N.J. 85, 89, 363 A.2d 321 (1976). It exists "to provide prosecutors an alternate method to dispose of charges levied against qualified applicants consistent with the interest of the applicant and the overall interests of society and the criminal justice system." State v. Brooks, 175 N.J. 215, 223, 814 A.2d 1051 (2002). PTI is "specifically designed to avoid a trial and the stigma accompanying a verdict of guilt to any criminal offense." State v. Bell, 217 N.J. 336, 347, 89 A.3d 568 (2014).
When it adopted the PTI statute, N.J.S.A. 2C:43-12 to -22, the Legislature declared it to be the State's public policy "to provide uniform opportunities to avoid prosecution for a criminal offense when early rehabilitation services or supervision may deter future criminal behavior, or when an applicant might be harmed by imposition of criminal sanctions." Bell, 217 N.J. at 347, 89 A.3d 568 (citing N.J.S.A. 2C:43-12(a)(1), (2) ). Although "the goal of expeditious disposition is certainly important and central to the PTI concept, it is at the same time subordinate to the rehabilitative function of PTI." Id. at 346, 89 A.3d 568 (quoting Leonardis, 71 N.J. at 98, 363 A.2d 321 ).
In accord with the statutory framework, Rule 3:28 and its Guidelines prescribed the procedure by which a designated PTI judge determines whether a criminal defendant will be admitted to this diversionary program.[4] Under the version of Rule 3:28 in effect when Likakis applied for PTI, a PTI application was required to be filed "at the earliest possible opportunity, including before indictment, but in any event no later than twenty-eight **474 days after indictment." R. 3:28(h). Within twenty-five days of the submission of the application, the criminal division manager would evaluate that application and make a recommendation. Ibid. The prosecutor would then review the application and advise the defendant whether the application was accepted or rejected. Ibid. The defendant was permitted to appeal the rejection of his or her PTI application to the Presiding Judge of the Criminal Division or the judge overseeing the matter. Ibid.
So that PTI will advance the Legislature's primary goal of rehabilitation, an applicant's admission into PTI depends on his or her "amenability to correction, responsiveness to rehabilitation and the nature of the offense." N.J.S.A. 2C:43-12(b)(1). The statute prescribes seventeen criteria for admission to PTI. See N.J.S.A. 2C:43-12(e). When Likakis applied for PTI, Rule 3:28 and its Guidelines supplemented the statutory criteria. See Pressler & Verniero, Current N.J. Court Rules, Guideline 3 to R. 3:28, at 1292-93 (2018).
The statute, Rule 3:28, and the Guidelines defined the parameters of a PTI participant's supervisory treatment. Such treatment was "for such period, as determined by the designated judge or the assignment judge, not to exceed three years." N.J.S.A. 2C:43-13(c). When a defendant was accepted into PTI, the designated judge was authorized, "on the recommendation of the criminal division *638 manager and with the consent of the prosecutor and the defendant," to postpone all further proceedings against that defendant on his or her charges for the specified period. R. 3:28(b).
"The terms and duration of the supervisory treatment shall be set forth in writing, signed by the prosecutor[,] and agreed to and signed by the participant" and his or her counsel if the participant is represented. N.J.S.A. 2C:43-13(a). A participant's violation of his or her PTI conditions may "warrant[ ] the participant's dismissal from the supervisory treatment program." N.J.S.A. 2C:43-13(e). In that event, "the charges against the participant may be reactivated," or "the conditions of continued participation in that or another supervisory treatment program" may be modified. Ibid.
**475 At the conclusion of the prescribed period of supervisory treatment, on the recommendation of the criminal division manager and with the consent of the prosecutor and the defendant, the PTI judge was authorized to dismiss the complaint, indictment, or accusation against the defendant; or to further postpone all proceedings if the maximum period of three years has not expired. R. 3:28(c)(1), (2); see also N.J.S.A. 2C:43-13(d) (providing for dismissal with prejudice, with prosecutor's consent, of PTI participant's complaint, indictment, or accusation upon completion of supervisory treatment). Alternatively, the PTI judge was permitted to "order the prosecution of the defendant to proceed in the ordinary course" on the written recommendation of the criminal division manager or the prosecutor, or on the court's own motion. R. 3:28(c)(3).
The victim of a PTI applicant's alleged offenses is not a party to a PTI proceeding. See generally N.J.S.A. 2C:43-12, -13; R. 3:28. The PTI statute and court rule, however, recognize the importance of a victim's concerns in PTI determinations. Among other criteria, the statute requires prosecutors to consider "[t]he desire of the complainant or victim to forego prosecution," N.J.S.A. 2C:43-12(e)(4), and "[t]he needs and interests of the victim and society," N.J.S.A. 2C:43-12(e)(7).[5]
Case law also acknowledges the importance of the victim's views. See, e.g., State v. Nicholson, 451 N.J. Super. 534, 554, 169 A.3d 990 (App. Div. 2017) (noting that victim's opposition to PTI is appropriate factor to be considered); State v. Imbriani, 291 N.J. Super. 171, 180-81, 677 A.2d 211 (App. Div. 1996) (same); cf. State v. Ridgway, 208 N.J. Super. 118, 127, 504 A.2d 1241 (Law Div. 1985) (finding that victim's family's opposition to defendant's admission **476 "is a factor which must be considered" but is not conclusive because likely not based on recognized PTI considerations).
The victim of a PTI applicant's alleged offenses is thus afforded an opportunity to state his or her view on the application. Although it is not dispositive, the victim's view must be considered when a defendant's application for PTI is determined, and conditions of PTI are imposed.
C.
1.
"[R]estitution serves to rehabilitate the wrongdoer and to compensate the victim of the wrongdoer's conduct."
*639 State v. Newman, 132 N.J. 159, 169, 623 A.2d 1355 (1993). It "extends beyond the concept of simple justice to one aggrieved and entitled to restitution of that unlawfully taken or reparation for loss unlawfully inflicted." State v. Harris, 70 N.J. 586, 592, 362 A.2d 32 (1976). "[C]ompensatory payments made pursuant to a restitution order 'can have correctional worth, regardless of whether the offender is required only to disgorge the fruits of his offense or to compensate persons for the injuries and losses suffered as a result of his crime.' " State v. DeAngelis, 329 N.J. Super. 178, 186, 747 A.2d 289 (App. Div. 2000) (quoting In re Parole Application of Trantino, 89 N.J. 347, 358, 446 A.2d 104 (1982) ).
An order of restitution is designed "to strip a defendant of pecuniary gain from the crime where that gain is directly related to the crime itself and the defendant has the ability (though not necessarily the immediate means) to pay." State v. Pulasty, 259 N.J. Super. 274, 283, 612 A.2d 952 (App. Div. 1992). As such, a restitution order is distinct "from a civil judgment, which is intended to make the victim whole." Felicioni v. AOC, 404 N.J. Super. 382, 394, 961 A.2d 1207 (App. Div. 2008).
Under the Rule that governed Likakis's admission into PTI, a court was authorized to include a restitution requirement as part **477 of a PTI participant's service plan. Pressler & Verniero, Guideline 3(k) to R. 3:28, at 1292. When addressing restitution under that Rule, we consider the law that governs restitution when it is imposed as a condition of probation or otherwise made part of a convicted defendant's criminal sentence. See Pressler & Verniero, Official Comment to Guideline 3 to R. 3:28, at 1294 (incorporating procedures for setting restitution in sentencing prescribed in State in Interest of D.G.W., 70 N.J. 488, 503-06, 361 A.2d 513 (1976), and Harris, 70 N.J. at 597-99, 362 A.2d 32, into PTI restitution determinations); see also State v. Jamiolkoski, 272 N.J. Super. 326, 329, 639 A.2d 1144 (App. Div. 1994) (discerning "no reason why standards governing the resolution of issues where restitution is a condition of probation should not apply in the same manner when restitution is a condition of defendant's participation in [PTI]").
In criminal sentencing, a court imposes restitution in addition to a term of imprisonment or probation if "(1) [t]he victim, or in the case of a homicide, the nearest relative of the victim, suffered a loss; and (2) [t]he defendant is able to pay or, given a fair opportunity, will be able to pay restitution." N.J.S.A. 2C:44-2(b). The statutory constraints ensure that the defendant will be capable of paying the restitution amount, thus achieving the rehabilitative goal. Newman, 132 N.J. at 172-73, 623 A.2d 1355 ; Trantino, 89 N.J. at 360, 446 A.2d 104.
A court imposing restitution must "conduct at least a summary hearing" to determine the ability to pay. State v. Paladino, 203 N.J. Super. 537, 547, 497 A.2d 562 (App. Div. 1985) ; see also Harris, 70 N.J. at 598-99, 362 A.2d 32 ; D.G.W., 70 N.J. at 501-03, 361 A.2d 513. In setting the restitution amount and the schedule for payment, "the court shall take into account all financial resources of the defendant, including the defendant's likely future earnings, and shall set the amount of restitution so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay." N.J.S.A. 2C:44-2(c)(2).
**478 When a sentencing court has not conducted a meaningful evaluation of a defendant's ability to pay, appellate courts routinely vacate restitution orders and remand for reconsideration. See, e.g., State v. Pessolano, 343 N.J. Super. 464, 479, 778 A.2d 1153 (App. Div. 2001) (remanding for *640 reconsideration where sentencing judge held no ability-to-pay hearing, restitution amount "was made subject to an unknown credit" for amount to be paid by codefendant, and restitution order lacked "fixed responsibility in terms of the obligation of either defendant"); State v. McLaughlin, 310 N.J. Super. 242, 264-65, 708 A.2d 716 (App. Div. 1998) (vacating restitution award and remanding for reconsideration in absence of any assessment of defendant's ability to pay); State v. Scribner, 298 N.J. Super. 366, 372, 689 A.2d 789 (App. Div. 1997) (reversing restitution order imposing joint and several liability on codefendants and remanding for reconsideration where State conceded restitution amount did not reflect victims' actual loss and court failed to assess each defendant's ability to pay). Thus, in the sentencing context, a restitution order will not survive appellate review if the sentencing court has not specified the restitution amount and determined whether the defendant will be capable of paying the amount required.
2.
For purposes of PTI, Rule 3:28 incorporated the core principles that govern restitution awards in criminal sentencing. First, in PTI proceedings as in sentencing, restitution exists to serve a rehabilitative goal and to compensate the victim. A restitution requirement could be included as part of a participant's service plan "when such a requirement promises to aid the rehabilitation of the offender." Pressler & Verniero, Guideline 3(k) to R. 3:28, at 1292. Indeed, Guideline 3(k) provided that admission to PTI could not be "denied solely on the basis of anticipated inability to meet a restitution requirement," and authorized "symbolic or partial restitution" when appropriate to further rehabilitation. Ibid.
**479 Second, a PTI court was authorized to impose a restitution obligation only after a careful assessment in a hearing of the defendant's ability to pay. Pressler & Verniero, Official Comment to Guideline 3 to R. 3:28, at 1294. PTI Guideline 3(k) mandated that any restitution requirement "be judicially determined at the time of enrollment." See also Jamiolkoski, 272 N.J. Super. at 329-30, 639 A.2d 1144 (reversing and remanding restitution order in light of trial court's failure to assess PTI participant's ability to pay); Pressler & Verniero, cmt. 3 on R. 3:28 ("Although admission may be conditioned on restitution, there must be a hearing to determine fair restitution if the amount is in dispute as well as the defendant's ability to pay."). Thus, before entering a restitution order, the court was required to quantify the obligation to be imposed and determine whether the defendant would be in a position to meet that obligation.
Third, the court rule governing Likakis's admission into PTI maintained a clear distinction between a PTI restitution order and any civil claim that may arise from the PTI participant's offenses against the victim. Subject to the constraints of Rule 3:28(c)(1), the court was not required to ensure that the victim will be compensated by insisting that the participant pay the entire restitution during the PTI period. As stated in the Official Comment to Guideline 3,
[f]ull restitution need not be completed during participation in the program. In determining whether a restitution requirement has been fulfilled, the designated judge shall consider good-faith efforts by the defendant. In appropriate cases, at the conclusion of participation, a civil judgment by confession may be entered by the court. However, restitution should never be used in PTI for the sole purpose of collecting monies for victims.
*641 [Pressler & Verniero, Official Comment to Guideline 3 to R. 3:28, at 1294-95.]
Thus, the court was permitted to terminate PTI and dismiss the complaint, indictment or accusation on the Civil Division manager's recommendation and with the parties' consent pursuant to N.J.S.A. 2C:43-13(c) and Rule 3:28(c)(1), even if the PTI participant had not paid the entire restitution amount.
**480 Evidence of a restitution condition imposed in PTI, however, was "not admissible against [the participant] in any subsequent civil or criminal proceeding." Pressler & Verniero, Guideline 3(k) to R. 3:28, at 1292. Nor could a victim rely in a civil action on the participant's disclosures regarding his or her charge in the course of supervisory treatment. Rule 3:28(c)(5) provided that "[n]o statement or other disclosure regarding the charge or charges against the participant made or disclosed by a participant in [PTI] to a person designated to provide supervisory treatment" shall be "admitted as evidence in any civil or criminal proceeding against the participant."[6] Consistent with its rehabilitative purpose, a PTI agreement is not intended to serve as the basis for the imposition of civil liability.[7]
V.
Those principles provide the framework for our determination of this appeal.
When the PTI court entered its order admitting Likakis to PTI, Providence had already incurred costs in the amount of $11,321.89 by virtue of its insurance payments to RSI Bank and faced the **481 prospect of substantial additional liability to RSI Bank. The record indicates that Providence had no objection to Likakis's PTI admission, as long as restitution in the amount of $11,321.89, and indemnification for future liabilities to RSI Bank, were made conditions of his admission.
The PTI court appropriately took into account Providence's view on Likakis's admission into PTI and its requested conditions. See N.J.S.A. 2C:43-12(e)(4), -12(e)(7). The PTI court did not, however, take the steps necessary to properly impose the indemnification requirement as a condition of PTI. It does not appear that the prosecutor or PTI Director presented evidence of Providence's past and prospective losses due to the alleged arson, or attempted to estimate Providence's prospective liability to RSI Bank. The record reflects no ability-to-pay hearing at which the PTI court could assess Likakis's current and future resources. The PTI court did not impose a specific restitution obligation or payment schedule for any restitution amount beyond the $11,321.89 that Likakis was required to pay.
*642 Instead, the PTI order generally required Likakis to "[p]rotect/compensate, indemnify and hold harmless [Providence] from any and all claims that may be brought against [Providence] by RSI Bank." That provision did not quantify Likakis's restitution obligation, let alone ensure that the obligation comported with his ability to pay. Indeed, until judgment was entered in favor of RSI Bank against Providence, no indemnification obligation could be defined.
In short, the indemnification provision set forth in Likakis's PTI agreement did not conform to the requirements of a valid restitution condition of PTI.
Based on the record, it appears that at the close of Likakis's one-year PTI supervisory period, the prosecutor did not raise before the PTI court the question of Likakis's obligation to indemnify and hold harmless Providence for future losses, or request that the court extend PTI or dismiss Likakis from the **482 program. See R. 3:28(c)(2) (providing for extension of PTI period up to three years); R. 3:28(c)(3) (addressing orders that PTI participant's prosecution resume); see also N.J.S.A. 2C:43-13(e) (authorizing PTI court to determine after summary hearing whether PTI participant's violation of PTI conditions "warrants the participant's dismissal from the supervisory treatment program or modification of the conditions of continued participation in that or another supervisory treatment program"). There is no indication that any party or the PTI court addressed the indemnification provision at that stage.
Instead, the PTI court terminated Likakis's PTI period and dismissed his indictment with no order regarding any outstanding restitution obligation. With his PTI proceedings thus concluded, Likakis had no obligation to make additional payments under the restitution provision of the PTI court's May 14, 2014 order.
Even if the PTI court had imposed an appropriate restitution condition on Likakis, requiring him to pay a specific amount based on his ability to pay, that condition could not have been properly admitted in this civil matter. See Pressler & Verniero, Guideline 3(k) to R. 3:28, at 1292. The invalid indemnification provision of the PTI agreement was clearly inadmissible in this case, either as the basis for the motion court's grant of partial summary judgment or as the dispositive evidence in the non-jury trial. Ibid. [8]
Accordingly, we hold that the trial court improperly enforced the indemnification provision and entered judgment in Providence's favor.
**483 VI.
The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.

The standard conditions of PTI supervision imposed included compliance with the law; contacts with the probation officer as directed; no unauthorized move out of state; maintenance of employment; and cooperation with any required testing, treatment, and counseling.

The phrase "indemnify and hold harmless" was a handwritten addition to the typed agreement, and was initialed by the prosecutor, who confirmed on the record that he wrote that language into the agreement.

Addressing Providence's claims for common-law indemnification, the trial court opined that Likakis's only duty to Providence derived from the insurance policy, and found that Providence had "failed to meet its burden to prove by a preponderance of the evidence that the arson was an act of [Likakis] entitling it to recovery." In the accompanying order, however, the trial court did not dismiss, or otherwise address, the counts of the third-party complaint that asserted a common-law indemnification claim.

Rule 3:28, the PTI Guidelines, and the Official Comments that govern this appeal were repealed and replaced, effective July 1, 2018. The new rules, R. 3:28-1 to -10, "are designed to realign the PTI program to its original purpose to divert from prosecution first time offenders who would benefit from its rehabilitative components." Notice to the Bar: Proposed New Court Rules 3:28-1 through 3:28-10 (Pretrial Intervention) 6 (Aug. 16, 2017). In addition to amending the admission process for certain offenders, the new rules incorporate certain provisions from Rule 3:28 and the PTI Guidelines. Ibid. We rely on the version of Rule 3:28 and the accompanying Guidelines and Comments that governed when Likakis was admitted to PTI.

The importance of the victim's views was underscored in a statutory amendment and the amendment to Rule 3:28 that followed the PTI proceeding at issue here. In nearly identical language, N.J.S.A. 2C:43-12(e) and Rule 3:28-4(c) require prosecutors and program directors to "give due consideration to the victim's position" on whether the defendant should be admitted into PTI. See L. 2015, c. 98; R. 3:28-4(c).

The Rule provided for an exception for statements by the criminal division manager to the prosecutor or court as to whether "the participant is satisfactorily responding to supervisory treatment." R. 3:28(c)(5).

With the exception of the procedure for the entry of a civil judgment following the termination of a participant's PTI supervision, Rule 3:28-5(d) incorporates the procedures for the entry of a restitution condition that were prescribed in Guideline 3(k) and the Official Comment to Guideline 3. Rule 3:28-5(d) provides that
[a] restitution or community service requirement, or both, may be included as part of an individual's service plan when such a requirement promises to aid the rehabilitation of the offender. Any such requirement and its terms shall be judicially determined at the time of enrollment following recommendation by the criminal division manager and consent by the prosecutor. Evidence of the restitution condition is not admissible against defendant in any subsequent civil or criminal proceeding. Admission to the program shall not be denied solely on the basis of anticipated inability to meet a restitution requirement.

Before the trial court and on appeal, the parties' dispute centered on two issues: whether the trial court in this civil matter had jurisdiction to enforce the PTI court's restitution order, and whether Providence was a third-party beneficiary of the PTI agreement. Neither question is central to our determination of this appeal. Instead, our decision rests on the PTI statute, the version of Rule 3:28 in effect at the relevant time, and the now-repealed PTI Guidelines.