**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1249-19

WILLIAM J. FOCAZIO, M.D.,

    Plaintiff-Appellant,

and

ARTHUR ST. REALTY, LLC,
and ENDO SURGICAL CENTER
OF EAST BRUNSWICK, LLC,

    Plaintiffs,

v.

JOSEPH S. ABOYOUN, ESQ.,
ABOYOUN & HELLER, LLC,
NAGEL RICE, LLP, RANDEE
MATLOFF, ESQ., and BRUCE
NAGEL, ESQ.,

    Defendants-Respondents.

_____

Argued May 20, 2021 – Decided June 7, 2021

Before Judges Yannotti, Haas, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2643-16.

Kenneth S. Thyne argued the cause for appellant (Roper & Thyne, LLC, attorneys; Kenneth S. Thyne, of counsel and on the briefs).

Daniel A. Malet argued the cause for respondents Joseph S. Aboyoun, Esq. and Aboyoun & Heller, LLC (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Christopher J. Carey, of counsel; Daniel A. Malet, on the brief).

Joanna Piorek argued the cause for respondents Nagel Rice, LLP, Randee Matloff, Esq., and Bruce Nagel, Esq. (Wilson Elser Moskowitz Edelman & Dicker, LLP, attorneys; Thomas F. Quinn and Joanna Piorek, of counsel and on the brief).

PER CURIAM

In this legal malpractice action, plaintiff William J. Focazio, M.D. appeals from the Law Division's March 6, 2019 orders that barred his experts' reports as net opinions and granted defendants' motions for summary judgment.[1] We are constrained to reverse and remand for further proceedings because the court did not adequately explain the reasons for its decision and, by not exercising its

---

[1] Focazio states in his notice of appeal that he is also challenging the court's October 30, 2019 order denying his motion for reconsideration. However, he did not address that order in his appellate brief. Therefore, we deem his appeal on this issue to have been abandoned. Grubb v. Borough of Hightstown, 353 N.J. Super. 333, 342 n.1 (App. Div. 2002) (explaining that an issue raised in a notice of appeal but not briefed is abandoned).

discretion to conduct a <u>Rule</u> 104 hearing, failed to develop a complete record permitting appellate review.

## I.

We begin by reciting the most salient facts in a light most favorable to plaintiff, the non-moving party. <u>Polzo v. Cnty. of Essex</u> (<u>Polzo II</u>), 209 N.J. 51, 56 n.1 (2012) (citing <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995)). In December 2007, Focazio bought a residential property in Wayne for approximately $1.6 million. At first, Focazio thought he could renovate the historic house that was located on the property, but he soon decided to demolish the structure and build a new home.

Focazio hired George A. Tsairis Architects, P.C. (GAT) to design the new house and retained GAT's affiliated construction company, Northeast Modular Homes, Inc. (Northeast) to construct a new modular home on the site.[2] Focazio retained defendants Joseph S. Aboyoun, Esq. and his law firm, Aboyoun & Heller LLC, to represent him in his contract negotiations with Tsairis.

Under the contracts, Focazio agreed to pay the Tsairis companies approximately $2.3 million for their work on the project. Of this amount,

---

[2] Both of these business entities were owned by George A. Tsairis, a licensed architect.

A-1249-19

Focazio paid Tsairis deposits totaling $969,000. Plaintiff alleged he questioned Aboyoun about the amount of the required deposits, but his lawyer told him not to worry. About $400,000 of the total Focazio paid was supposed to be set aside to buy the modular home from the manufacturer named in the contracts. However, Tsairis switched manufacturers without Focazio's knowledge or permission. Tsairis allegedly paid the new manufacturer only $5000 of the amount due and kept the rest.

As required by the architectural contract, GAT conducted a zoning study and opined the proposed construction would comply with local land development ordinances and that no variances or waivers were needed. However, after Northeast demolished the home, the municipality stopped all work on the project because an environmental protection disturbance waiver was required and had not been obtained.

The entire project was supposed to be completed within 300 days of the "date of commencement," which was defined as the date on which all necessary construction permits were obtained. Because these permits were not all obtained, work never "commenced" under the terms of the contract. Focazio complained about the delay to Aboyoun. The lawyer told Focazio that he could

A-1249-19

cancel the contract because of the delay, but he would have to sue Tsairis's companies to attempt to recoup the deposits he had already made.

In June 2010, Aboyoun sent a letter to Northeast advising that Focazio was canceling the contract and asking that Tsairis return all the payments received to date. Tsiaris's attorney sent a letter in response, and blamed the delay on the project engineer Focazio had hired. On Focazio's behalf, Aboyoun rejected Tsiaris's efforts to resolve the matter and retained an attorney from another law firm to help him prepare for litigation.

At first, Focazio wanted to mediate the dispute, but Aboyoun advised the attorney he had hired to draft a complaint. Aboyoun reviewed the complaint and the attorney revised it pursuant to Aboyoun's instructions.

In the midst of the drafting process, Focazio retained defendant Nagel Rice LLP, and two of its attorneys, Bruce Nagel, Esq. and Randee Matloff, Esq. (collectively the Nagel defendants), to represent him in the lawsuit against Tsairis. Aboyoun remained involved on plaintiff's behalf, but the attorney he had recently hired did not.

Matloff prepared a new complaint, and Aboyoun approved it for filing on June 1, 2011. In the complaint, Focazio sought damages against the Tsairis companies for breach of contract, breach of good faith and fair dealing, unjust

5

enrichment, conversion, and consumer fraud. The complaint did not name Tsairis as a defendant in his individual capacity.

In early 2012, Focazio hired another attorney, George Abdy, Esq., to advise him on the litigation. Aboyoun and the Nagel defendants also remained as Focazio's attorneys. By March 2013, however, Focazio was in arrears in paying the Nagel defendants and had also failed to retain an engineering expert needed for the litigation.

In May 2013, the trial court granted the Nagel defendants' motion to be relieved as Focazio's attorneys, and Abdy and Matthew Cavaliere, Esq. substituted in as his counsel of record. Prior to becoming Focazio's "official" attorney in the litigation, Abdy noticed that under the terms of the construction contract, the date of commencement of work did not begin until the final municipal approvals were obtained. Thus, Abdy advised Focazio that the contract had been prematurely terminated. At that point, Abdy and Cavaliere decided their best course of action was to move the matter into binding arbitration.

In arbitration, Abdy attempted to amend the complaint to assert a professional negligence claim against Tsairis in his individual capacity as

6

Focazio's architect. However, the arbitrator determined that this claim was barred by the statute of limitations.

Ultimately, the arbitrator ruled in favor of the Tsairis companies in December 2016. The arbitrator found that Focazio had improperly terminated both the architectural contract with GAT and the construction contract with Northeast. The arbitrator ordered Focazio to pay GAT $164,470, plus interest and counsel fees, for breaching the architectural contract by terminating it too early. As for the construction contract, the arbitrator ruled that the parties' claims against each other were a "wash" and did not warrant any additional damages.

In July 2016, several months before the completion of arbitration, Focazio hired a new attorney, who filed a separate legal malpractice complaint against Aboyoun and his firm and against the Nagel defendants. Among other things, Focazio alleged that Aboyoun and his firm failed to advise him of the pitfalls present in the contracts that required him to pay large deposits without any guarantees that work would progress at a reasonable pace. Focazio also claimed that Aboyoun should have included provisions in the agreements that would have allowed him to reclaim his payments in the event the project was cancelled.

A-1249-19

In addition, Focazio asserted that Aboyoun was negligent because he advised him he could cancel the contracts, when work on the contracts had not yet commenced under the terms of the agreements because the necessary municipal approvals had not yet been obtained. As a result, Focazio was exposed to claims for lost profits and attorney's fees. Focazio alleged this would not have occurred had Aboyoun brought different causes of action against Tsairis and his companies.

As for the Nagel defendants, Focazio alleged they breached their duty of care to him by not timely asserting a claim for architectural malpractice and fraud against Tsairis individually. By that time in the litigation, both of Tsairis's companies were effectively "judgment proof" and, therefore, Focazio believed the only possible source of damages was Tsairis.

A period of discovery followed, which was extended several times by order of the court. Because Focazio had still not filed his expert reports on the question of causation and liability, Aboyoun and the Nagel defendants filed motions for summary judgment in July 2018. Focazio attempted to obtain additional time from the court to submit the reports and eventually filed them in September 2018.

A-1249-19

Barry E. Levine, Esq., prepared a twenty-page report concerning Aboyoun and his firm. Levine opined that these defendants breached their duty to Focazio in four ways. First, Levine found that Aboyoun failed to apprise Focazio of the risks of entering the transaction and did not advise him to reject the deal, particularly because the contract required Focazio to pay, without security, "over $800,000 and receive nothing in return." Second, Levine stated that in cancelling the contract on Focazio's behalf, Aboyoun incorrectly asserted a breach on grounds that were not provided in the contract, thereby exposing Focazio to the claim of lost profits and attorney's fees that he was required to pay as a result of the arbitration.

Third, Levine opined that Aboyoun failed to assert in the complaint that Tsairis was professionally negligent by failing to know that an environment disturbance waiver was required and that zoning approvals were also needed. Finally, Levine stated that Aboyoun should have claimed that Tsairis breached the contract when he unilaterally switched modular home manufacturers without Focazio's knowledge or permission.

Focazio's other expert, Peter A. Ouda, Esq., submitted a seventeen-page report concerning Focazio's claims of legal malpractice against the Nagel defendants. According to Ouda, these defendants breached their duty to Focazio

by failing to advise him that the contracts were wrongfully terminated and by failing to assert a professional negligence claim against Tsairis individually.

Although the two expert reports were untimely, the trial judge entered an order on September 28, 2018 extending the time for discovery after conducting oral argument on defendants' summary judgment motions on September 14, 2018. As a result, no depositions were conducted of Levine or Ouda. In addition, the judge did not hold a hearing on the admissibility of the reports as permitted by N.J.R.E. 104.

On March 6, 2019, the judge entered two orders granting summary judgment to Aboyoun and his firm and to the Nagel defendants. In a short written opinion attached to the orders, the judge explained that he granted the motions after finding that Levine's and Ouda's expert reports were inadmissible net opinions and, without expert testimony on the legal standard of care owed to Focazio and the proximate cause of any damages due to him, Focazio could not sustain his burden of proof.

The judge did not cite to any specific portions of the expert reports. Instead, he generally stated that both reports repeated the allegations made by Focazio in his complaint and "fail[ed] to cite to any legal precedent or standard for the conclusions" presented by the experts.

In terms of legal analysis, the judge relied solely upon our decision in Froom v. Perel, 377 N.J. Super. 298 (App. Div. 2005). In that case, we held

> [w]here . . . a plaintiff alleges that he suffered a loss in a particular transaction because an attorney failed to take steps to protect his interest, the plaintiff must present evidence that, even in the absence of negligence by the attorney, the other parties to the transaction would have recognized [the] plaintiff's interest and [the] plaintiff would have derived a benefit from it.
>
> [Id. at 315 (citations omitted).]

Here, the judge found that Levine and Ouda presented no evidence in their reports that Tsairis and his companies would have acceded to Focazio's requests for changes to the contract terms if the attorneys had proposed them. Thus, under Froom, the judge ruled that all of the experts' claims against defendants were inadmissible net opinions.

As discussed above, however, not all of the experts' opinions concerned the actions and inactions of Focazio's attorneys during the contract negotiation phase covered by our decision in Froom. Levine and Ouda both opined that Aboyoun and the Nagel defendants should have insisted that the contracts be structured in a manner more favorable to Focazio. As the judge found, this opinion was not supported by evidence in the record that Tsairis and his

11

companies would have accepted these terms and, therefore, the expert opinions on the contract negotiation issues ran afoul of our ruling in Froom.

However, Levine also stated that Aboyoun wrongfully asserted a breach of contract for a reason that was not supported by the agreement when he cancelled the contract for not being completed in a timely manner. As the contract made clear, the 300-day completion period incorrectly relied upon by Aboyoun did not begin to run until the municipal approvals were received. However, these approvals had not been obtained before Aboyoun prematurely declared that a breach had occurred.

Unlike in Froom, this claim was not dependent upon the submission of evidence by the expert that the other party to the contract would have "recognized plaintiff's interest and plaintiff would have derived a benefit from it." Ibid. Similarly, Levine's opinion that Aboyoun failed to assert breach of contract claims against Tsairis individually after he unilaterally substituted the modular home manufacturer and because he did not advise Focazio of the project's zoning requirements did not fall under the Froom evidentiary requirement relied upon by the judge.

The judge also found that Ouda's two findings of legal malpractice by the Nagel defendants were barred by Froom. As noted above, Ouda opined that

these defendants failed to advise Focazio that Aboyoun wrongfully terminated the contracts and failed to assert a professional negligence claim against Tsairis individually. However, neither of these findings was dependent upon the presentation of evidence that Focazio would have changed his position and that Tsairis would have assented to a modification of the contracts. Thus, Ouda's position on these issues did not constitute a net opinion under Froom. However, the judge provided no other basis for excluding it.

Focazio filed an untimely motion for reconsideration, which the judge nevertheless considered. After conducting oral argument on August 12, 2019, the judge denied the motion on October 30, 2019. In a short written opinion, the judge again noted that he was relying on Froom to bar all of the experts' opinions, including those that did not arise during the contract negotiation phase. This appeal followed.

## II.

On appeal, Focazio argues that the trial judge erred in granting defendants' motions for summary judgment. For the reasons that follow, we reverse the March 6, 2019 orders and remand for further factfinding on whether plaintiff's two experts provided only net opinions.

Our review of a trial court's grant of summary judgment is de novo, applying the same legal standard as the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); see also R. 4:46-2(c).

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

To prevail on a legal malpractice claim, a plaintiff must prove "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Conklin v.

Hannoch Weisman, 145 N.J. 395, 416 (1996) (quoting Lovett v. Estate of Lovett, 250 N.J. Super. 79, 87 (Ch. Div. 1991)). In order to establish these factors, Focazio submitted expert reports prepared by Levine and Ouda.

Two rules of evidence frame the analysis for determining the admissibility of expert testimony. N.J.R.E. 702 identifies when expert testimony is permissible and requires the experts to be qualified in their respective fields. N.J.R.E. 703 addresses the foundation for expert testimony. Expert opinions must "be grounded in facts or data derived from[:] (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts." Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Polzo v. Cty. of Essex (Polzo I), 196 N.J. 569, 583 (2008)). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alteration in original) (quoting Polzo I, 196 N.J. at 583).

Therefore, an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, L.L.C., 216 N.J. 115, 144 (2013)).

15

The net opinion rule directs that experts "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). In short, the net opinion rule is "a prohibition against speculative testimony." Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

However, "[t]he net opinion rule is not a standard of perfection." Townsend, 221 N.J. at 54. "An expert's proposed testimony should not be excluded merely 'because it fails to account for some particular condition or fact which the adversary considers relevant.'" Ibid. (quoting State v. Freeman, 223 N.J. Super. 92, 116 (App. Div. 1988)). An expert's failure "to give weight to a factor thought important by an adverse party does not reduce his testimony to an inadmissible net opinion if he otherwise offers sufficient reasons which logically support his opinion." Ibid. (quoting Rosenberg v. Tavorath, 352 N.J. Super. 385, 402 (App. Div. 2002)).

As with any dispositive motion presented to a trial court, the judge has an obligation to fully explain the factual and legal bases for his or her conclusions. In this regard, Rule 1:7-4(a) clearly states that in addition to entering an

16

appropriate written order, a trial judge "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right . . . ." See Shulas v. Estabrook, 385 N.J. Super. 91, 96 (App. Div. 2006) (requiring an adequate explanation of the reasons for the court's action).

The judge's decision must clearly demonstrate that the litigants have been heard and their arguments were considered. While a judge need not author a lengthy written opinion, or deliver an hour-long oral ruling to meet this requirement in every case, he or she must always state what facts form the basis of his or her decision, and then weigh and evaluate those facts in light of the governing law "to reach whatever conclusion may logically flow from" those facts. Slutsky v. Slutsky, 451 N.J. Super. 332, 357 (App. Div. 2017). Because justice requires no less, "[a]ll conclusions must be supported." Ibid.

In sum, "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). Unfortunately, the judge's decision in this case did not satisfy these requirements.

As already noted, the judge's written ruling that Focazio's expert reports were inadmissible as net opinions was entirely conclusory in nature. It did not cite to specific portions of Levine's or Ouda's reports to support the determination that neither presented the facts or evidence underlying their opinions.

Even more concerning, the judge's decision did not differentiate between the various grounds each of the experts raised in support of Focazio's claim that Aboyoun and the Nagel defendants breached their duty to him and were the proximate cause of the losses he sustained in his litigation with Tsairis and his companies. Instead, the decision incorrectly combines each of the experts' contentions into a single assertion, i.e., that defendants should have drafted better contracts between Focazio and Tsairis and provided him with different advice than they did in the contract negotiation stage. Because the experts did not present evidence that Tsairis and his companies would have agreed to the changes they now propose, the judge found that our decision in <u>Froom</u> rendered the reports inadmissible net opinions.

However, the problems Levine and Ouda identified during the contract negotiation stage were only part of the actionable mistakes the experts believed defendants made while representing Focazio. Levine also opined that Aboyoun

18

cited the wrong reason for terminating the contracts by incorrectly focusing on the 300-day construction period which had not yet begun to run because municipal approvals had not been secured. In addition, Levine stated that Aboyoun could have launched successful causes of actions against Tsairis individually for unilaterally changing the modular home manufacturer and for architectural malpractice due to Tsairis's failure to know about the need for the environmental waiver or other zoning requirements.

Regarding the Nagel defendants, the judge did not address Ouda's assertion that they should have sued Aboyoun individually for professional malpractice or his assertion that these defendants should have advised Focazio that Aboyoun had wrongfully terminated the contracts. Again, Ouda's opinion on these points was not barred by Froom and the judge provided no other grounds for determining it was a net opinion.

In sum, the judge did not fully analyze all of the opinions rendered by Focazio's experts or make adequate findings of fact concerning them. As a result, we are unable to review the contentions the parties have raised about the judge's decision on the admissibility of the expert reports or his grant of summary judgment to defendants.

A-1249-19

In so ruling, we note that the difficulty in addressing the expert reports was likely caused by Focazio's late submission of them after the close of discovery and after defendants had already filed their motions for summary judgment. The parties did not conduct depositions of either Levine or Ouda and the judge did not hold a Rule 104 hearing concerning the admissibility of the experts' reports. As a result, and even though the judge accepted the untimely reports submitted by Focazio, the experts never had the opportunity through testimony to explain fully the bases for their conclusions and the judge did not have the opportunity to review that testimony in rendering his decision on whether the reports were net opinions.

In pertinent part, N.J.R.E. 104(a)(1) provides that a judge "shall decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." The judge "may hear and determine such matters out of the presence or hearing of the jury." N.J.R.E. 104(a)(2). The decision to conduct a Rule 104 hearing rests within the sound discretion of the trial court. Kemp ex rel Wright v. State, 174 N.J. 412, 432 (2002).

However, when "the court's ruling on admissibility may be dispositive of the merits, the sounder practice is to afford the proponent of the expert's opinion an opportunity to prove its admissibility at a Rule 104 hearing." Id. at 432-33.

 A-1249-19

"The Rule 104 hearing allows the court to assess whether the expert's opinion is based on . . . sound reasoning or unsubstantiated personal beliefs . . . ." Id. at 427 (citing Landrigan, 127 N.J. at 414).

Under the idiosyncratic circumstances presented in this case, we are satisfied that a Rule 104 hearing was warranted, especially because barring Focazio's experts would clearly result in the dismissal of his case. Id. at 432-33. Thus, on remand, the trial court should permit the parties to depose the experts and then conduct a Rule 104 hearing before determining the admissibility of Levine's and Ouda's opinions.

Finally, we acknowledge that our review of an order granting summary judgment is de novo. RSI Bank, 234 N.J. at 472. However, "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018). Accordingly, we have no alternative but to reverse the March 6, 2019 orders, and remand this matter to the trial court for further proceedings. In doing so, we do not suggest a preferred result, but only that the trial court reconsider the matter and fully address the factual and legal arguments presented in this case.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21

A-1249-19