**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1665-20

AMBOY BANK,

    Plaintiff-Respondent,

v.

HARBOR VIEW ESTATES LLC,
SAMUEL JUFFE, ROBERT
ROSENSHINE, CHARLES
NOREIKA, JOSEPH STADNIK
and JACK BUDELMAN,

    Defendants-Appellants,

and

HARBOR VIEW ESTATES LLC

    Third-Party Plaintiff-
    Appellant,

v.

G.S. REALTY CORP., AB REALTY
LLC, CKES, LLC, and AB
FOXMOORE AT NEWFIELD, LLC,

    Third-Party Defendants-
    Respondents.

_____

Argued November 17, 2021 – Decided March 3, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2258-18.

Steven E. Angstreich argued the cause for appellants (Weir & Partners, LLP, attorneys; Steven E. Angstreich, on the briefs).

Mark A. Roney argued the cause for respondents (Hill Wallack LLP, attorneys; Michael Kahme and Mark A. Roney, of counsel and on the brief).

PER CURIAM

This appeal arises out of an action brought by plaintiff Amboy Bank (Amboy) to collect monies due under promissory notes signed by the borrower, defendant Harbor View Estates, LLC (Harbor, LLC), and guaranteed by defendants Samuel Juffe, Robert Rosenshine, Charles Noreika, Joseph Stadnik, and Jack Budelman (Guarantors, and, collectively with Harbor, LLC, defendants). Amboy lent Harbor, LLC over $3 million for the development of a townhouse project. The project was not completed, and Harbor, LLC defaulted by failing to repay the monies due under the promissory notes and a related mortgage.

2

A-1665-20

Amboy sued Harbor, LLC in a separate foreclosure action and, after foreclosing on the property, obtained a judgment. Amboy brought this action to recover the deficiency between what Amboy lent and the fair market value of the foreclosed property. Ultimately, on February 19, 2021, Amboy obtained a final judgment in this note-deficiency action against defendants for $1,176,732.27, plus post-judgment interest.

Defendants appeal from that final judgment, arguing that the trial court erred in (1) dismissing on summary judgment their claims that Amboy had breached the implied covenant of good faith and fair dealing, and (2) not allowing them to take discovery on their claim that Amboy and third-party defendants violated the New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2. Defendants ask that we reverse the orders granting summary judgment on the implied-covenant claim and precluding discovery on the RICO claim and remand the matter for further proceedings on their claims. We reject defendants' arguments and affirm.

I.

The Guarantors established Harbor, LLC to develop a townhouse project in Little Egg Harbor Township. The project was to be known as Harbor View Estates. The plan was to construct and sell forty-three townhouses in six

buildings. Each townhouse was to be three stories high, consisting of 1,965 square feet, with three bedrooms and a two-car garage.

In March 2014, Amboy agreed to loan Harbor, LLC $4,190,000 for the cost to develop the project. Amboy and Harbor, LLC signed a loan agreement, two promissory notes, and related loan documents. To secure the loan, Harbor, LLC also gave Amboy a mortgage on the property. In addition, the Guarantors guaranteed the repayment of the loan.

The loan agreement provided that a portion of the loan was to refinance and cover costs Harbor, LLC had spent for the purchase of the property and for certain site development. The additional amount of the loan was structured as a revolving line-of-credit for further development and construction of the townhouses. Under the loan agreement, Harbor, LLC could draw down on the line-of-credit based on the construction and sale of townhouse units. Accordingly, the agreement required construction to be performed in stages with no more than two buildings and sixteen units being built at any time. Amboy agreed to make loan advances for units that were contracted for sale with deposits equal to ten percent of the sale price for a single unit and for a second building if fifty percent of the townhouse units in one building were sold or under contract to be sold. Construction advances for the remaining four

A-1665-20

buildings would continue using this system, with no advances permitted until fifty percent of the units in the prior building were contracted to sell.

The loan agreement contained several anti-waiver provisions, which required any amendments or modifications to the terms of the loan documents to be in writing and signed by authorized representatives of Amboy and Harbor, LLC.  In that regard, the loan agreement expressly stated that (1) any delay by Amboy in exercising its rights would not operate as a waiver; and (2) any failure by Amboy to insist on strict performance by Harbor, LLC would not waive Amboy's rights.

In November 2015, Amboy and Harbor, LLC signed a written amendment to increase the loan to $4,980,000.  Accordingly, both promissory notes were increased by written amendments.  The amendments to the notes also included a provision requiring further modifications to be in writing:

> The Lender shall not be deemed to waive any of its rights or remedies hereunder unless such waiver is in writing and signed by the Lender and then only to the extent specifically set forth therein.  A waiver in one event shall not be continuing or a bar to or waiver of a subsequent event.  In the event any agreement contained in this Note should be breached by the Undersigned and thereafter waived by the Lender, such waiver shall be limited to the actual breach so waived and shall not be deemed to waive any other breach hereunder.

A-1665-20

The two notes also stated that Amboy had the "sole" discretion to extend the maturity dates of the notes if requested by Harbor, LLC.

Construction on the seven units in building one began in March 2015. Construction on the four units in building two began in June 2016.

In October 2016, Harbor, LLC requested extensions on the maturity dates of the two notes, acknowledging that it was "not prepared to pay for the loan in full at th[at] time." Within one week of that request, Amboy agreed to those extensions. In March 2017, the parties signed amendments to the notes extending their maturity dates to February 2018 for one note and February 2019 for the other note. The documents also stated that "all other terms" not amended "shall remain in full force and effect and the Note shall in no way be construed to have been modified, changed or altered or the lien thereof affected in any way whatsoever, except as set forth herein." The Guarantors separately agreed to reaffirm, amend, and restated their general and continuing guarantees.

Sales of the townhouse units were not as anticipated. In October 2017, Harbor, LLC informed Amboy that it could not sell sufficient units to meet the sold-unit prerequisite for receiving additional loan advances. Consequently, Harbor, LLC requested a modification of the loan agreement so that it could use leased townhouse units to meet the requirement for future loan advances. Over

A-1665-20

the next seven months, representatives of Harbor, LLC and Amboy communicated about modifications to the loan agreement and notes to allow the project to continue to be developed.

The managing principal of Harbor, LLC, Samuel Juffe, had numerous communications with Amboy's lending officer, Despina Small. In those communications, Juffe sought a modification of the requirement that fifty percent of the units in a building be sold before Amboy would advance funding for construction of another building. Juffe also requested a modification permitting Harbor, LLC to use leased units to satisfy the sold-units requirement. While Juffe certified that he believed Small had orally agreed to those modifications, it is undisputed that no written modification was agreed to and signed by an authorized representative of Amboy.

Juffe and representatives of Amboy also discussed Harbor, LLC obtaining a loan from another lender to provide some funding for the project. In March 2018, Amboy sent Harbor, LLC a proposal with terms and conditions for a third-party lender to get involved in the project. Harbor, LLC could not satisfy the conditions of that proposal.

During these discussions, Amboy agreed to extend the maturity date of one of the notes from February 2018 to May 2018. Nevertheless, in March 2018,

Harbor, LLC failed to make the monthly payment due on the other note. Thereafter, Harbor, LLC also failed to make the full payment on the note due in May 2018. Consequently, Amboy sent Harbor, LLC notices declaring both notes to be in default and demanding full payment. When Harbor, LLC failed to repay the loan, Amboy filed two actions: a foreclosure action based on the mortgage and a note-deficiency action based on the notes and guarantees.

In the foreclosure action, Amboy obtained a judgment of foreclosure for just under $4 million plus interest and costs. It then bought the property, and Harbor, LLC sought a fair market value (FMV) credit. Following a bench trial, the court in the foreclosure action established the FMV for the property to be $2.9 million. Accordingly, in February 2020, the final judgment in the foreclosure action was reduced to $1,128,835.93. [1]

Meanwhile, in this note-deficiency action, Harbor, LLC disputed Amboy's claims and filed affirmative defenses and counterclaims. Among those affirmative defenses and counterclaims, Harbor, LLC asserted that Amboy had breached the implied covenant of good faith and fair dealing (the Implied

---

[1] Harbor, LLC filed a separate appeal from the FMV determination in the foreclosure action. We address that appeal in a separate unpublished opinion. See Amboy Bank v. Harbor View Estates, LLC, Docket No. A-3523-19.

Covenant). Thereafter, Harbor, LLC also asserted a claim that Amboy and third-party defendants had violated RICO.

Following a series of motions, on January 24, 2020, the trial court entered an order precluding Harbor, LLC from taking discovery related to its RICO claim. Thereafter, Amboy moved for summary judgment on all remaining claims. On February 2, 2021, the trial court granted summary judgment to Amboy and dismissed with prejudice defendants' affirmative defenses and counterclaims, including the Implied Covenant and RICO claims, and Harbor, LLC's third-party complaint. The court explained those rulings in a written opinion.

On February 19, 2021, the trial court entered final judgment in this note-deficiency action fixing the award against defendants, jointly and severally, in the amount of $1,176,732.27 plus post-judgment interest. Defendants now appeal.

II.

On this appeal, defendants contend that the trial court erred in (1) dismissing on summary judgment their claim that Amboy violated the Implied Covenant; and (2) precluding them from taking discovery on their claim that Amboy and third-party defendants had violated RICO. Accordingly, defendants

9

appeal from the January 24, 2020 and February 2, 2021 orders. We hold that the Implied Covenant claim was correctly dismissed, and the trial court did not abuse its discretion in precluding discovery on the RICO claim. Accordingly, we affirm the orders and the February 19, 2021 final judgment.

1.    The Dismissal of the Implied Covenant Claim.

We review the grant of summary judgment de novo using "the same standard that govern[ed] the motion judge's determination." Caraballo v. City of Jersey City Police Dep't, 237 N.J. 255, 264 (2019) (citing RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018)). We will uphold a grant of summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

An implied covenant of good faith and fair dealing exists in every contract in New Jersey. Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577 (2011); Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001); Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). The covenant requires that parties to a

contract "refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224-25 (2005) (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

"The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Brunswick Hills, 182 N.J. at 225 (quoting 23 Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002)); see also Wilson, 168 N.J. at 251. "Proof of 'bad motive or intention' is vital to an action for breach of the covenant." Ibid. Consequently, the Implied Covenant "cannot override an express term in a contract." Wilson, 168 N.J. at 244.

Defendants argue that Amboy breached the Implied Covenant by failing to honor its alleged oral modification to substitute leased units for sold units. Defendants contend that Harbor, LLC relied on that oral modification to continue construction, which involved the partners of the LLC contributing more of their own money to the project. In addition, defendants assert that Amboy agreed to assist Harbor, LLC with new financing but then withdrew that support.

11

Defendants claim that Amboy acted in bad faith and used the default on the loan as a pretext for exercising its contractual rights to terminate the loan and foreclose on the property.

Viewing the material facts in the light most favorable to defendants, defendants cannot prove a breach of the Implied Covenant. All of defendants' allegations involve oral modifications to the loan agreement and notes. The notes and loan agreement, however, expressly stated that any modifications had to be in writing and signed by an authorized representative of Amboy. It is undisputed that no written modification allowed the substitution of leased units for sold units. It is also undisputed that no written modification allowed a third-party lender to participate in the project.

Defendants cannot sidestep the express requirements of the loan agreement and notes by contending that Amboy's actions were in bad faith. Amboy's actions were consistent with its contractual rights. In other words, the contract expressly conditioned further loan advances on the sale of townhouse units. Consequently, when Amboy refused to allow leased units to be substituted for sold units, it was not acting in bad faith; rather, it was acting in accordance with the express rights of the parties' contract. Similarly, when Amboy refused to diminish its security interest in the property so that a third-

12

party lender could become involved, it was not acting in bad faith. Again, it was acting in accordance with its rights under the loan agreement and notes.

The Implied Covenant "may not be invoked by a commercial debtor to preclude a creditor from exercising its bargained-for rights under a loan agreement." Glenfed Fin. Corp., Com. Fin. Div. v. Penick Corp., 276 N.J. Super. 163, 175 (App. Div. 1994). Amboy's refusal to modify the loan agreement and notes was consistent with its rights under the written agreements. No matter how those actions are characterized, they do not as a matter of law constitute bad faith in violation of the Implied Covenant. Accordingly, we affirm the order dismissing the claims of violation of the Implied Covenant both as an affirmative defense and a counterclaim.

2.    The RICO Claim.

Harbor, LLC contends that the trial court erred by not allowing it to take discovery on its counterclaim and third-party complaint alleging that Amboy and third-party defendants violated RICO. This issue comes before us after the trial court had granted summary judgment dismissing the RICO claim. Accordingly, we consider whether further discovery could have supplied the elements of a RICO claim. Because we conclude that further discovery would

13

not have established a RICO claim, we affirm both the order precluding the discovery and the grant of summary judgment dismissing the RICO claim.

Rule 4:46-1 allows a party to file a motion for summary judgment before the close of discovery. Claims of incomplete discovery alone are not sufficient to deny summary judgment. See Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003). The party opposing summary judgment must "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action," Badiali v. New Jersey Manufacturers Insurance Group, 220 N.J. 544, 555 (2015), and identify the specific discovery needed. Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007). An appellate court will generally defer to a trial court's decision regarding discovery unless that decision was an abuse of discretion or based on a mistaken understanding of the law. Brugaletta v. Garcia, 234 N.J. 225, 240 (2018).

To establish a RICO claim, the claimant must demonstrate five elements: "(1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern

of racketeering activity." State v. Ball, 141 N.J. 142, 181 (1995); N.J.S.A. 2C:41-2(c). Racketeering activity is defined as a predicate act of enumerated crimes recognized under New Jersey law "or equivalent crimes under the laws of any other jurisdiction," or conduct constituting racketeering activity under the federal RICO Act. N.J.S.A. 2C:41-1(a). A "pattern of racketeering activity" involves at least two predicate offenses committed within ten years of one another and "[a] showing that the incidents . . . embrace criminal conduct that has either the same or similar purposes, results, participants . . . or are otherwise interrelated by distinguishing characteristics and are not isolated incidents." N.J.S.A. 2C:41-1(d)(2).

To bring a private cause of action under RICO, a claimant must prove damages to its business or property "by reason of a violation of" RICO and the predicate act must be the proximate cause of the claimant's injury. N.J.S.A. 2C:41-4(c); Franklin Med. Assocs. v. Newark Public Schs., 362 N.J. Super. 494, 514 (App. Div. 2003) (explaining "a direct relationship between plaintiff's injury and defendant's conduct" is required to establish standing to pursue a RICO claim (quoting Interchange State Bank v. Veglia, 286 N.J. Super. 164, 178-81 (App. Div. 1995))).

Harbor, LLC alleged that Amboy and the third-party defendants operated a racketeering enterprise under which Amboy would default loans for construction projects and then have the third-party defendants purchase those projects at a substantially reduced cost. Harbor, LLC acknowledged that it did not have any discovery concerning alleged predicate acts involving other loans and, therefore, it sought discovery concerning other loans. The trial court correctly reasoned that before Harbor, LLC could seek such discovery, it had to show how it was damaged by a predicate act. In other words, Harbor, LLC had to show that Amboy improperly defaulted the loan to Harbor, LLC.

The material undisputed facts establish that Harbor, LLC defaulted on the loan when it failed to make the payments called for under the notes. The material undisputed facts also establish that Amboy acted within its contractual rights in not extending further loan advances. Indeed, the judgment in the foreclosure action precludes Harbor, LLC from contending that Amboy criminally exercised its rights under the loan agreement, notes, and mortgage. In short, Harbor, LLC could not prove that its business or property was damaged by a predicate act because Amboy's actions were lawful under the loan agreement, notes, and mortgage. Without the showing of damage to its own business or property, Harbor, LLC was not entitled to further discovery

16

concerning other loans.  Accordingly, we discern no abuse of discretion in the trial court's order precluding further RICO discovery and we affirm that order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1665-20